Court of Chancery—Tuttle v. State Mutual Liability Ins. Co.

WILLIAM E. TUTTLE, JR., commissioner, &c., complainant,

*v.*

STATE MUTUAL LIABILITY INSURANCE COMPANY, defendant.

[Decided October 21st, 1924.]

Insolvency—Receiver's Petition for Court's Instructions—Classi-
fication of Claims—Whether Counsel Fees and Court Costs
Contracted by Policyholders After Insolvency in Defending
Suits Covered by Policies Shall Be Allowed—Whether
Claims for Unearned Premiums Shall Be Allowed—Whether
Counsel Fees for Services Rendered Company Prior to De-
cree of Insolvency Should Be Allowed—Whether Contempt
Proceedings Against Policyholders Who Had Failed to Pay
Court's Order of Assessment Should Be Instituted—Receiver
is Entitled to Court's Insistence and Instruction, in Some
Cases by Bringing in All Parties Interested, in Other Cases
in a Less Formal Manner—Receiver Must Still Perform His
Statutory Duties and Claimants Have Their Statutory Rights
—Proceedings Such as the Present Probably Not Efficient
to Bar Such Rights—Views of Court on Questions Asked
Indicated.

On order to show cause on receiver's petition for instruc-
tions.

*Mr. William Newcorn,* for the receiver.

*Mr. Harold B. Wells, Mr. Jacob L. Furer, Mr. Thomas L.
Gaskill. Messrs. Grosken & Moriarity, Messrs. Warren, Britt
& Stanton,* for the divers respondents.

BUCHANAN, V. C.

The receiver of the defendant, Mutual Insurance Company,
filed petition for aid and instruction from the court to the
following matters:

1. Whether or not the claims filed with the receiver should
be classified, and, if so, in what order?

2. Whether or not the receiver should allow the counsel fees and court costs contracted by policyholders, after the decree of insolvency, in defending suits covered by the policies?

3. Whether or not the receiver should allow claims for unearned premiums and permit such claimants to set-off such claims against assessments levied or to be levied?

4. Whether or not the claims filed for counsel fees for services to the company rendered prior to the decree of insolvency should be allowed or reduced?

5. Whether or not the receiver should be authorized to institute contempt proceedings against policyholders who had failed to pay the assessment levied under the order of this court?

An order to show cause in respect of the foregoing matters was issued and served in the usual manner upon the creditors and policyholders of the company, a number of whom appeared by counsel on the return thereof, and oral argument was had and briefs submitted on the various points involved.

I am satisfied that the course sought to be taken in the present instance is not the best, nor the proper practice. A receiver, as an officer of this court, is, of course, entitled to the assistance and instruction of the court as to matters arising in the administration of his trust, and, in regard to some matters (such, for instance, as the question of levying an assessment heretofore brought up in this cause), to bring in all parties interested and bind them by such order as might be made. As to other matters, the advice of the court may sometimes properly be asked, but less formally, and without the issuance of process to the creditors and stockholders.

This is particularly true as to the questions of allowance of claims involved in the present proceedings. Section 56 of the Insurance act—2 *Comp. Stat.* 2836 (at *p.* 2854)—incorporates into that statute the provisions of the General Corporation act relative to the powers and duties of receivers. By the latter act (section 76) it is the duty of the receiver to pass upon and allow or disallow claims and notify the claim-

ant, who by section 78 (*Cf.* also *P. L. 1921 p. 724*) may have the receiver's determination reviewed.

Ordinarily, therefore, it is contemplated that the receiver, with the assistance of his counsel, shall dispose of such matters. In important questions, where the receiver and his counsel find themselves in doubt, especially if the question involves a number of claims, the advice of the court may properly be sought informally, but the receiver must still perform his statutory duties and the claimants have their statutory rights. I doubt the efficacy of such proceedings as the present to bar such rights. However, since the questions have been argued at length, I will indicate my views.

1. The receiver should, of course, classify the claims filed with him. They should be classified as "allowed" and "disallowed," and the "allowed" claims should be classified as to whether they have been allowed as "preferred" claims or merely "general claims," also as to whether they are actual or contingent. Moreover, the preferred claims should be further divided into classes, where it appears that there are, or may be, questions of priority amongst them. These classifications should be embodied in the receiver's report (*under section 74, Corporation act*) after the time for filing claims has expired, and subsequent changes, if any, noted in subsequent reports. It is often impossible, and seldom necessary, to determine questions of priority amongst preferred claims until the time for distribution approaches, then such questions should be determined by the receiver and embodied in a report so that the same may be made the basis of an order of distribution, after notice and opportunity to all interested parties to be heard if they dispute the correctness of the receiver's determination.

In the present case the receiver has not filed *any report* as such, although much of the matter, with certain classifications of claims, is appended in a schedule annexed to his petition in this proceeding. There is no determination of priority amongst the classes, nor is there sufficient information before this court to enable the court to make a comprehensive determination of such priorities. I can only indicate to

the receiver in a general way that his determination should prefer first (since there are apparently no claims under chattel or other mortgages under *section 84* of the *Corporation act*) the claims, if any, of laborers and workmen; second, judgment creditors, if any, whose judgments have become a lien upon the property of the company (*Doane* v. *Millville Insurance Co.*, *45 N. J. Eq. 274* (at *p. 282*), and *section 86, Corporation act*); and, lastly, the general or unpreferred creditors.

This applies only to the general assets of the company; there may be creditors who have liens upon certain portions of the assets or who are entitled to preference as regards certain funds. The determination (and report) of the receiver should include, not only the priority of payment as to these, but also the extent or amount of the property or funds to which their liens extend or are limited. A judgment creditor, even in the absence of execution issued, may have a lien on lands. *Gallagher* v. *True American Publishing Co.*, *75 N. J. Eq. 171*.

Whether or not there are any such in the present case does not appear. In the schedule annexed to the receiver's petition are listed two judgments against the defendant company, but it is not stated whether execution issued on either; nor does it appear whether such judgments are entitled to lien or preference, or are deprived thereof under *P. L. 1919 ch. 208 § 2;* nor does it appear whether or not the company had any real estate. The receiver seems not to have filed any inventory—at least, I find none in the files—except a paper captioned and endorsed "Affidavit," which contains a mere unitemized statement of cash receipts and disbursements, the total value of certain bonds, and the total aggregate of claims presented. No one examining the files would ever think of finding an inventory or report under such a title.

Certain claims by attorneys are also listed, but it does not appear whether or not any of them are entitled to, or claim, lien or preference under the statute relating to such lien.

Argument has been had at some length as to one special fund in regard to which liens or preferences are claimed by

certain creditors. This is the $50,000 fund of securities deposited by the company with the commissioners of banking and insurance under and in compliance with the provisions of *P. L. 1920 ch. 213 p. 410*. Here, again, for some strange reason, there is no mention of the facts in the receiver's petition, nor in anything else filed in the proceedings; no mention of the fund, nor that special claims are made to it, nor by whom, nor the nature of such special claims and the facts on which they are based. However, there seems no doubt as to what the main facts are—these being universally admitted on the argument—so that, for present purposes, I may assume them as properly before me.

It thus appears that the securities in question are now in the hands of the receiver; that claim is made of lien thereon by the holders of two judgments against the company, both apparently by the holders of judgments against policyholders, of whom one apparently has issued execution and levy against the fund prior to the injunction in this suit; that claim is also made thereto by a number of persons holding judgments against policyholders, but who have not obtained judgments against the company.

The statute referred to provides that the deposit shall be made "in stocks, bonds or bonds and mortgages"—in other words, securities instead of cash—and that the commissioner "shall hold" these securities "for the benefit and security of the persons injured," and that the commissioner shall pay from proceeds of the securities "any final judgment secured by any persons or person under the aforesaid act," to wit (*P. L. 1916 ch. 136 p. 283*). As long as the company is solvent and complies with the law, and pays such judgments, it may collect the income from the securities; when execution and levy is made on the securities, the commissioner shall sell enough of them to cover the same and pay it over to the officer making the levy.

I think it is clear, from the provisions of the statute, that this fund was thus constituted a special trust fund for the benefit of a certain class of persons, and that, broadly speaking, that class consists of those persons who might, in fact,

thereafter be injured by auto bus policyholders of this company. The title of the act is illuminating: "An act for the more efficient protection of every person suffering loss, damage or injury as a result of an accident, occurring by reason of the ownership, maintenance or use of an auto bus upon the jublic highway, and for the more efficient collection of judgments secured under 'An act concerning auto busses,'" &c. *P. L. 1916 ch. 136.*

And from the body of the act it is apparent that by "persons injured" is meant persons injured by auto busses in such manner as to acquire valid claims against persons insured (in the company which has deposited the fund) against liability for such injuries.

The commissioner is the trustee. How and why the receiver obtained the fund is not material in the present discussion, because he would, of course, hold it impressed with the same trusts and liens as would the commissioner. Obviously, the company retains (and the general creditors of the company, through the receiver, succeed to) an ownership and interest in the fund over and above such part as is not required for the special class of beneficiaries.

To go further, however, and determine who among the general class mentioned in the statute are entitled to priority of payment out of the fund, and how and when such right matures, and the rights of priority amongst them, is somewhat more difficult. The act is not carefully drawn. The commissioner is to pay out of the fund "any final judgment secured by any person or persons under the aforesaid act of" 1916.

This cannot mean a final judgment secured by an injured person against an auto bus owner, for the act of 1916 confers no right of action for injuries. It does, perhaps, impliedly, by providing that the insurance policy shall be for the benefit of the persons injured by the auto bus, confer a right of action against the insurance company upon an injured person who has established his right to damages from an auto bus owner insured in the company. At any rate, I have no doubt that it was intended so to do, and that the legislature

in the act of 1920 understood the act of 1916 as conferring such right of action. Hence, I am satisfied that the "final judgment" mentioned in the act of 1920 means a final judgment obtained by an injured person against the insurance company which made the particular deposit. Moreover, obviously, it could not have been intended by the legislature that the commissioner should pay out of the *insurance company's* funds a judgment against a *policyholder* without more. It would first be required that it be established in some way that the insurance company was, in fact, liable; that it had, in fact, issued a policy covering the judgment obtained by the injured person.

So, then, though the general class for whose benefit the fund is deposited, is all persons injured by auto bus policyholders of the depositing company, *payment* is to be made only to persons who recover final judgment against the insurance company. The last paragraph of the act provides that "when execution and levy as aforesaid [*sic*]" is made on these securities (as a matter of fact there is nothing else whatever about execution and levy anywhere in the act), the commissioner shall sell and pay the judgment to the levying officer.

I conclude that this qualifies the prior provision (that he shall pay any final judgment), and that he is to pay the final judgment only upon such execution and levy. It is only a *final* judgment that he is to pay, and he must have some means of knowing that a judgment presented is a final judgment. This means is provided by this clause as to payment on execution and levy, which would be stayed if an appeal were pending.

In my view, where such a judgment, execution and levy is made prior to the appointment of the receiver, such judgment creditor has a perfected prior lien upon that fund. If there be more than one such, their respective priorities would be in accordance with the order of the respective levies.

But I also think that all persons who were injured by auto bus policyholders prior to the appointment of the receiver, and who have since that time established their right

to damages from such policyholder and their right to payment by the insurance company under the policy, have a preferred claim upon this fund, ahead of the general creditors, though subject to the special judgment levies just mentioned. From my interpretation of the language of the statutory enactments which we have been considering, and from the standpoint of the principle of public policy which it seems to me is declared by the legislature in these enactments, I think that it must be held that the legislature intended to confer an inchoate right or lien, as to this fund, upon the persons injured by these auto busses. (It should, perhaps, be noted that, under the statutes, the injuries are limited to bodily injury and death; I do not know whether this company issued policies covering any other liability or not.)

The insurance policies and the securities which are required to be deposited are to be for the benefit and security of persons injured. When, therefore, a person does, in fact, suffer bodily injury (or death) in such manner that an auto bus policyholder is liable in damages therefor, he immediately becomes one of the class for whom this trust fund was created, and acquires a right therein which he may (and, indeed, *must*, in order to receive payment from the fund) proceed later to perfect by establishing his right against the policyholder and against the insurance company. But his right accrues, if at all, on the happening of the accident; the subsequent proceedings are simply to *prove* that the right did accrue.

As to such injured persons, where their judgments and executions and levies have not been had prior to the receivership, all must stand on the same footing in equity, and share *pro rata* in the fund, if it be not large enough to pay all. The appointment of the receiver ties their hands, and none can thereafter proceed to acquire a preference over the others.

Their lien or right in the fund, however, since it accrues by statute and not by legal proceedings, is not nullified by *P. L. 1919 ch. 208*. Whether or not the special preference of a judgment holder who has levied on the fund is or may be

nullified under this statute I have not considered. The
point was not argued, and I do not know whether or not the
question does or can arise under the actual circumstances in
this case.

2. Claims by policyholders for the amount of court costs
and counsel fees (to the extent that such are reasonable and
proper in amount and reasonably incurred) incurred by them
in the defense of suits covered by their policies, should be
allowed by the receiver, if the accident forming the basis of
the suit so defended occurred prior to the receiver's ap-
pointment and cancellation of policies. The company by
its policy agreed to defend such suit at its own expense. Its
failure to do so creates a liability for which claim may prop-
erly be made. The amount of the liability is not known at
the time of the receiver's appointment, but neither is it
known in the case of the tort-claimant. *Cf. Lehigh and
Wilkes-Barre Coal Co.* v. *Stevens & Condit Transportation
Co.* Of course, too, the liability is at first only contingent,
there may never be any suit brought against the assured by
the injured party; but the contingency is one beyond the
control of the assured under the terms of the policy. If the
accident occurred after the appointment of the receiver, the
claim should be disallowed. *Doane* v. *Millville Mutual In-
surance Co., 43 N. J. Eq. 522* (at *p. 535*).

3. It would seem that claims for unearned premiums
should be allowed. The policies under the cancellation
clause so provide in effect. When the policyholder is de-
prived of a portion of the insurance protection for which he
has paid, as he is on cancellation by the company or the ap-
pointment of a receiver, he is entitled to the return of the
proportionate part of the premium paid.

Such claimants should not, however, be permitted, in my
view, to set-off such claims as against the assessments levied
by the receiver under the order heretofore made herein. Sec-
tion 66 of the Corporation act refers to "just set-offs" in the
case of "mutual dealings between the corporation and the
person." It does not seem to me that the claim against the
company and the assessment made by the receiver are such

mutual dealings. Moreover, it does not seem to me that such a set-off would be just, at any rate, to the extent that the allowance of the set-off would deprive preferred claimants of payment, and bearing in mind that this is a mutual company. *Cf.*, also *Vanalta* v. *New Jersey Mutual Life Insurance Co., 31 N. J. Eq. 15* (at p. *23*).

4. As to the fourth question raised by the receiver's petition, there is no information before the court from which any conclusion could be reached, and the brief of receiver's counsel withdraws the question from consideration.

5. The receiver will not be authorized to institute contempt proceedings against the policyholders who have failed to pay the assessments ordered. It seems evident such procedings would be unwarranted. *Aspinwall* v. *Aspinwall, 53 N. J. Eq. 684.* It is true that in the present case the order is not for the payment by one party to a contract to the other, but to the receiver who is an officer of this court. But the receiver is only in this behalf an intermediary—the payment is to be made to him only that he may pay to the other parties to the contract in their proper shares—so that the principle is unaltered. The receiver's procedure should be by execution or sequestration.

As I have before indicated, I doubt that any order of any particular efficacy can be entered in this proceeding, and, ordinarily, I should advise an order discharging the order to show cause. Since the creditors and policyholders in this cause, however, are so numerous, and the time, trouble and expense of service upon them (which is so considerable) has been had. I am desirous of preserving such benefit, if any, as may be had therefrom, and if counsel for the receiver, or any of the other interested parties, believe that this can be accomplished, they may submit their views to me on motion to settle the form of the order.