Commonwealth ex rel. *v.* Keystone
Indemnity Exchange.

Argued May 25, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank J. Strassner, Jr.*, with him *Edward J. Kirchner*,
of *Kirchner, Mitchell & White,* for appellant.

334

*John A. Skelton, Jr.,* with him *Claude T. Reno,* Attorney General, and *Lewis J. Finestone,* for appellee.

*Willis F. Daniels,* with him *William S. Bailey, Franklin B. Gelder, Rose Daniels, David P. Reese, Jr.,* and *Harold W. Swope,* for appellees, under Rule 61.

OPINION BY MR. JUSTICE LINN, June 19, 1939:

This appeal is from an order made by the Court of Common Pleas of Dauphin County on the petition of the Insurance Commissioner, as statutory liquidator of Keystone Indemnity Exchange, requiring subscribers, among them, appellant, to pay certain amounts "for the purpose of paying losses of said Keystone Indemnity Exchange unpaid at the date of dissolution, and other legal obligations, expenses of administering said estate, as set forth in the reports of the liquidator, including the computing of the pro rata liability of each subscriber; . . ."

The appellant was a subscriber and here presents only two questions.[1] On May 18, 1933, on the Attorney General's suggestion, the court below directed the Insurance Commissioner to take possession of and liquidate the business of Keystone Indemnity Exchange. The Exchange, acting by its attorney-in-fact, Keystone Indemnity Company, on the same day, waived a rule to show cause and admitted the facts suggested by the Attorney General. Dissolution was ordered. Decem-

---

[1] The brief stated them as follows: "1. Can a person, holding expired policy contract issued by an insolvent reciprocal or inter-insurance exchange, be subjected to an assessment without proof that insolvency occurred prior to the date of expiration of the policy contract?

"2. Can an assessment be levied against a holder of an expired policy contract issued by a reciprocal or interinsurance exchange, which later became insolvent, where the policy provided that it was nonassessable but, by statute, the attorney-in-fact was required to issue policy contracts providing for an assessment?"

ber 20, 1937, the statutory liquidator filed his report, showing claims allowed and the necessity for an assessment on subscribers at a suggested rate.

The subscribers to the dissolved exchange were engaged in insurance pursuant to sections 1001-1010 of the Act of May 17, 1921, P. L. 682, 40 PS sections 961-970; as amended April 9, 1929, P. L. 464, 40 PS section 964. Their attorney-in-fact for the purposes of reciprocal insurance[2] was Keystone Indemnity Company. The amendment of 1929 (supra) provided: "Such subscribers, so contracting among themselves, shall, through their attorney, file with the Insurance Commissioner of this Commonwealth a declaration, verified by the oath of such attorney, setting forth: . . . (d) a copy of the form of power of attorney, or other authority of such attorney, under which such insurance is to be effected or exchanged, and which shall provide that the liability of the subscribers, exchanging contracts of indemnity, shall make provision for contingent liability, equal to not less than one additional annual premium or deposit charged."

The cash assets of the Exchange suffered by the management of the agent, the Indemnity Company, and were insufficient[3] to pay the claims allowed by the liquidator, whose duty it then became to convert other assets into cash. The other assets were the subscribers' obligations resulting from the Act of April 9, 1929, to pay a sum, in the words of the Act, "equal to not less

---

[2] The nature of such insurance is considered in *Long v. Sakleson,* 328 Pa. 261, 195 A. 416.

[3] In the brief filed on behalf of the Commonwealth, the following appears: "As shown by the Petition and First Report of the Statutory Liquidator, as of September 1, 1937, 1,676 proofs of claim for a total of $734,552.93 were filed. The Statutory Liquidator allowed 539 claims for a total of $291,455.55. Cash on hand on September 1, 1937, amounted to $8,017.46. During the period from April 9, 1929, to May 18, 1933, there were 62,882 policies in the hands of 26,950 subscribers who paid an average annual premium deposit of $44.50 for a total of $2,843,233.27."

than one additional annual premium or deposit charged." It appears that for some time after the approval of the Act, the subscribers' agent, the Indemnity Company, issued policies which not only did not contain the contingent liability provision required by the statute, but even provided no assessment should be made. That default of appellant's agent is now said to constitute a defense to the demand for payment of the assessment by the principal.

The Commonwealth, acting by the Insurance Commissioner, enforcing the insurance law, is a party to this proceeding on the one hand, and the appellant-subscriber, the other party. Either the appellant was engaging in the insurance business as the statute permitted, with such limited liability as was allowed, or appellant was engaged in violation of the law, without the limited liability, and subject to additional penalties. It is no answer to the State's request that appellant pay its share of the contingent liability, that its agent, the Indemnity Company, made a contract which provided that it should not be paid. These obligations were not limited to be performed only during the period in which the insurance was to be in force; the subscriber assumed more than one obligation; one was that the insurance should be effective for the specified period, but another obligation was that the contingent liability must be assumed and would, of course, remain an existing obligation until the subscriber discharged it by payment or was otherwise relieved. These contingent liabilities were assets on which it was the duty of the statutory liquidator to realize.

Order affirmed at appellant's costs.