CAMDEN CITY DISTRICT COURT.

INSURANCE COMMISSIONER, COMMONWEALTH OF PENN-
SYLVANIA, LIQUIDATOR OF KEYSTONE INDEMNITY
EXCHANGE, ETC., PLAINTIFF, v. DAVID GRIFFITHS,
JR., DEFENDANT.

Decided March 5, 1945.

For the plaintiff, *Frank F. Patterson* and *Paul J. Donnelly*
(of the Philadelphia bar).

For the defendant, *Meyer L. Sakin.*

MARTINO, D. C. J. On May 18th, 1933, the Court of
Common Pleas of Dauphin County, Pennsylvania, ordered
the Insurance Commissioner of the Commonwealth of Penn-
sylvania to take possession of the Keystone Indemnity Ex-
change and to liquidate the business and the affairs of the
Exchange in accordance with a Pennsylvania statute.

On September 12th, 1938, the Court of Common Pleas
of Dauphin County, Pennsylvania, filed a decree ordering an

assessment against the subscribers of the said Exchange who held policies exchanged among said subscribers and issued from April 9th, 1929, to May 18th, 1933, said assessment to be in an amount equal to one annual deposit premium on each policy issued to them as provided by statute of Pennsylvania. The defendant herein, a resident of the State of New Jersey, was a subscriber to the Exchange and suit in this court for the assessment allowed by virtue of the Pennsylvania decree was started in this court.

The facts as determined by this court from the testimony are these:

George T. Ryan between the years 1929 and 1933 was a head clerk in the employ of the Pennsylvania Railroad Company and as such employee held the office of president of the Pennsylvania Railroad Employees' Co-Operative Association, with offices located on Broad Street, in the City of Philadelphia. The defendant was also an employee of the Pennsylvania Railroad Company. This co-operative association had a membership close to 2,000 railroad employees, and in the words of Mr. Ryan was able to do "co-operative buying for these employees." The association therefore undertook to interest its members in the insurance features submitted by the Keystone Indemnity Exchange. The present suit is predicated on policies issued from May 19th, 1929, to May 19th, 1933. The defendant testified that the witness, George T. Ryan, was an agent of the Keystone Indemnity Exchange and called upon him at his home located in Camden, New Jersey, on May 17th, 1929, and solicited the first application of insurance on behalf of the Keystone Indemnity Exchange. The first record of any policy existing between the defendant and the Keystone Indemnity Exchange is on May 19th, 1927. It is admitted that said Exchange was not authorized to do business in this state. It is contended that this constitutes a violation of *R. S.* 17:17–12; *N. J. S. A.* 17:17–12, which provides:

"No person by himself, or by his brokers, agents, solicitors, surveyors, canvassers or other representatives of whatever designation, nor any such broker, agent, &c., or other repre-

sentative shall solicit, negotiate or effect any contract of insurance of any kind including all kinds of insurance * * * or receive any premium, commission, fee or other payment thereon or maintain or operate any office in this state for the transaction of the business of insurance, or in any manner, directly or indirectly, transact the business of insurance of any kind whatsoever within this state unless specifically authorized under the laws of this state. Any person violating any of the provisions of this section shall be guilty of a misdemeanor. (As amended L. 1942, ch. 162, p. 471, sections 1, 2.)"

One argument propounded by the defendant is to the effect that a violation of the above statute prohibits the right of the plaintiff to recover. *Cunningham* v. *Brockway Fast Motor Freight, Inc.*, 18 *N. J. Mis. R.* 101; 11 *Atl. Rep.* (*2d*) 422.

On the other hand, plaintiff has produced plenary evidence by way of positive proof and contradiction of the defendant to lead this court to the factual conclusion that defendant is mistaken and that the contract of insurance was made in the State of Pennsylvania and by that conclusion the validity, construction and effect of such a contract must be governed by the law of the place where it was made or to be performed. The State of Pennsylvania upheld the contract in question. *Commonwealth* v. *Keystone Indemnity Exchange*, 335 *Pa.* 333; 6 *Atl. Rep.* (*2d*) 821. On petition for re-argument the decision was affirmed, 338 *Pa.* 405; 11 *Atl. Rep.* (*2d*) 887. The court there held that the subscribers were liable to pay a sum equal to not less than one additional annual premium or deposit charged. The present suit is for an additional premium on each policy or a total of two hundred seventeen dollars and thirty-seven cents ($217.37), with interest from August 15th, 1940.

The Supreme Court of the United States in passing upon an analogous situation in *Broderick* v. *Rosner*, 294 *U. S.* 629; 55 *S. Ct.* 589; 79 *L. Ed.* 1100, said the following:

"Here the nature of the cause of action brings it within the scope of the full faith and credit clause. The statutory liability sought to be enforced is contractual in character. The

assessment is an incident of the incorporation. Thus the subject-matter is peculiarly within the regulatory power of New York, as the State of Incorporation. 'So much so * * * that no other state properly can be said to have any public policy thereon. And what the law of * * * New Jersey may be respecting the relative rights and obligations of creditors and stockholders of corporations of its creation, and the mode and means of enforcing them, is apart from the question under consideration.' * * * In respect to the determination of liability for an assessment, the New Jersey stockholders submitted themselves to the jurisdiction of New York. For 'the act of becoming a member (of a corporation) is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicil, membership looks to and must be governed by the law of the state granting the incorporation.'" (294 *U. S.* 643-644; 55 *S. Ct.* 593.)

And in *Chandler* v. *Peketz*, 297 *U. S.* 609; 56 *S. Ct.* 602; 80 *L. Ed.* 881, the Supreme Court of the United States said:

"We have held that the Minnesota provisions constituted a reasonable regulation for enforcing the liability assumed by those who became stockholders in corporations organized under the laws of that state; that the order levying the assessment is made conclusive as to all matters relating to the amount and propriety thereof, and the necessity therefor; that it is thus conclusive, although the stockholder may not have been a party to the suit in which it was made or notified that an assessment was contemplated, as the order is not in the nature of a personal judgment against him and he must be deemed, by virtue of his relation to the corporation and the obligation assumed with respect to its debts, to be represented by it in the proceedings; and, further, that one against whom the order of assessment is sought to be enforced is not precluded from showing that he is not a stockholder or is not the holder of as many shares as is alleged, or has a claim against the corporation which in law or in equity he is entitled to set off against the assessment or has any other defense personal of himself." (297 *U. S.* 610-611; 56 *S. Ct.* 603.)

In matters dealing with judicial transactions between states and resting on mandates of the federal constitution, state courts are bound by holding of the federal court which accordingly is accepted as the law of the land. *Simmons* v. *Sloan,* 104 *N. J. L.* 612; 142 *Atl. Rep.* 15.

The United States Supreme Court in a four-three decision (Mr. Justice Roberts and Mr. Justice Reed did not participate) on June 5th, 1944, held that the business of insurance was interstate commerce. *United States* v. *Southeastern Underwriters Association*, 322 *U. S.* 533; 64 *S. Ct.* 1162. For seventy-five years before this decision the rule has been otherwise. The effect of this decision will undoubtedly render impotent some provisions of our insurance statutes as set forth in *R. S.* 17:17–1, *et seq.; N. J. S. A.* 17:17–1, *et seq.* Since it is not necessary or judicially proper for this inferior court to pass upon the constitutionality of the sections of our insurance statutes cited by the defendant in his brief it should be noted that Chief Justice Stone in his dissenting opinion warned:

"But the immediate and only practical effect of the decision now rendered is to withdraw from the states in large measure, the regulation of insurance and to confer it on the national government * * *. In the years since this court's pronouncement came to be regarded as settled constitutional doctrine, vast efforts have gone into the development of schemes of state regulation and into the organization of the insurance business in conformity to such regulatory requirements vast amounts of capital have been invested in the business in reliance on the permanence of the existing system of state regulation. How far that system is now supplanted is not, and in the nature of things could not well be, explained in the court's opinion. The government admits that statutes of at least five states will be invalidated by the decision as in conflict with the Sherman Act [15 *U. S. C. A.*, §§ 1, *et seq.*] and the argument in this court reveals serious doubt whether many others may not also be inconsistent with the act."

Defendant's further contention that plaintiff's complaint is insufficient in law is without merit. The state of demand

states a legal cause of action and apprises the defendant of the claim against him. The suit is based upon a foreign decree of a court of law of the State of Pennsylvania, and the state of demand clearly states that fact. *O'Donnell* v. *Weiler,* 72 *N. J. L.* 142; 59 *Atl. Rep.* 1055; *DeJianne* v. *Citizens' Protective Association of New Jersey,* 79 *N. J. L.* 107; 74 *Atl. Rep.* 443; *Kennell* v. *Gershonovitz et al.,* 84 *N. J. L.* 577; 87 *Atl. Rep.* 130.

Judgment for the plaintiff in the sum of $217.37 with interest and costs of suit.