## Commonwealth ex rel. v. The Urban Mutual Fire Insurance Co. of Pennsylvania

*T. McKeen Chidsey,* Attorney General, and *Ralph B. Umsted,* Deputy Attorney General, for Commonwealth.

*John A. Skelton,* general counsel, for Pennsylvania Department of Insurance, for defendant.

*Storey & Bailey,* for exceptant.

NEELY, J., April 10, 1950.—The Insurance Commissioner of the Commonwealth of Pennsylvania, as statutory liquidator of the Urban Mutual Fire Insurance Company, has presented his petition praying the court to make an order of assessment against the members, the policyholders of that company. The matter is now before us on the exception of Roy E. Shellenberger, a policyholder, to the liquidator's petition.

The company, a domestic mutual fire insurance company, engaged in the business of writing fire and automobile insurance, was dissolved by order of this court dated November 24, 1947, which order directed the Insurance Commissioner to take possession of the assets of the company and to liquidate its business and affairs.

On September 23, 1949, the statutory liquidator filed his petition for an assessment order, wherein he prayed that the court direct that an assessment be made against the members of the company in an amount equal to the earned premiums on their policies chargeable to that part of the period from November 24, 1946, to November 23, 1947, inclusive, when such policies were in force, and against members with assessable premium note policies the amount shown in said notes; with certain credits for payment of previous assessments. Policies to be assessed under the plan of assessment were of three classes, to wit: (a) Assessable premium note fire policies; (b) cash mutual fire policies; (c) cash mutual automobile policies. The statutory liquidator recommends under the plan of assessment that claims for the unearned cash premiums from the date of the dissolution of the company to the termination of the members' policies should not be allowed.

The petition avers an estimated deficit of $75,410.61, necessitating an assessment in order to pay claims and liquidation expenses. The assets are estimated at $23,086.23. The liabilities on the basis of the company's records are estimated at $98,496.84, of which $84,816.31 have been filed with the statutory liquidator, $4,863.75 having been filed for unearned premium claims. The maximum assessment liability of the various policyholders totals $163,301.98. The total proposed assessment on the basis of the earned cash premiums for one year prior to date of dissolution is in an

amount considerably less than the maximum assessment liability.

At the hearing on the petition exceptant appeared in person and by counsel and registered his objection to the plan of assessment. He protested the disallowance of the above-mentioned claims for unearned cash premiums. Exceptant holds fire insurance policy no. 110048, effective April 19, 1946, which was written for a three-year term, in the amount of $7,000, covering his buildings and contents, for which he paid a cash premium of $136.80. Exceptant maintains that he has a claim for the unearned premium on his policy from November 24, 1947, the date of dissolution, to April 19, 1949, the date of the termination of his policy.

It was admitted at the argument that the earned premium on exceptant's policy from inception date to November 23, 1947, is $73.91, and that the claimed unearned premium from November 24, 1947, the dissolution date, to April 19, 1949, amounts to $64.69. The pro rata earned premium for the year prior to dissolution, to wit, from November 24, 1946, to November 23, 1947, has been computed as $46.07, which is the amount of the proposed assessment against this policyholder.

The question raised by the exception is whether the members of a domestic mutual fire insurance company in dissolution, which had issued policies with assessment liability, have claims against the company's statutory liquidator for the payment of the unearned portion of their cash premiums covering the period from the date of the company's dissolution to what would have been the normal termination date of their policies. If the members have claims for such unearned premiums, then the exception to the petition must be sustained. Otherwise, it must be overruled and exceptant's claim disallowed.

Under The Insurance Company Law of May 17, 1921, P. L. 682, as amended, 40 PS §341, et seq., and

under the express terms of exceptant's policy, a member of the Urban Mutual Fire Insurance Company of Pennsylvania was subject to a contingent liability equal to the amount of the premium written into the policy. Thus, section 806 of The Insurance Company Law, 40 PS §916, provides:

"The 'maximum premium' payable by any member of a mutual company, other than a mutual life company, shall be expressed in the policy, or in the application for the insurance if attached to the policy. Such maximum premium shall be a cash premium and an additional contingent premium not less than the cash premium, or may be solely a cash premium. No policy shall be issued for a cash premium without an additional contingent premium, unless the company has a surplus which is not less in amount than the capital required of domestic stock insurance companies transacting the same kind of insurance: Provided, that this section shall not be construed to require a surplus in excess of an amount equal to the unearned premiums on the policies without contingent premiums."

And the policy provision is as follows:

"Limit of Liability: The contingent liability of the insured shall not exceed an additional amount equal to the premium written in this policy. . . ."

The statutory liquidator in the instant case would have the right to make an assessment equal to the cash policy premium against each policyholder: Commonwealth ex rel. v. Keystone Indemnity Exchange, 34 D. & C. 505 (1938) ; Commonwealth ex rel. Schnader v. Keystone Indemnity Exchange, 335 Pa. 333 (1939) ; Commonwealth ex rel. Schnader v. Keystone Indemnity Exchange, 338 Pa. 405 (1940). Since the members who had paid cash premiums could have been assessed the full amount of their premiums, they would have no cause to complain that the proposed assessment, in the interest of expediting liquidation as claimed by the

statutory liquidator, is in a sum less than the amount of the premium in their policies.

The liquidator states that the amount of this assessment is predicated on the assumption that claims for unearned premiums subsequent to dissolution are invalid. It is pointed out by the liquidator that in the event the court does not adopt his recommendation as to the disallowance of these claims for unearned premiums, then the proposed assessment based upon the earned premiums will be insufficient. The amount of the assessment then, in the last analysis, depends upon the validity of the contention which exceptant advances in this case with respect to his claim for unearned premium. Hence, the order for assessment which the liquidator seeks by his petition depends upon the disposition of exceptant's claim.

The policyholder's right to return of unearned premium depends upon the contract of insurance: 3 Couch, Insurance, sec. 705. See also Healy v. Stuyvesant Insurance Co., 72 Pa. Superior Ct. 168 (1919) ; 29 Am. Jur., §452. The rule is stated in 3 Couch, Insurance, sec. 709, as follows:

"In the absence of statutory or contract provision to the contrary, if a legal risk has once attached or commenced, there can be no apportionment or return afterward of the premium, so far as that particular risk is concerned. And diminution in its duration has no effect to decrease the amount stipulated as the premium or price for renewing the risk, for it is sufficient to preclude a return that the insurer has been liable for any period, however short. This rule is based upon just and equitable principles, for the insurer has, by taking upon himself the peril, become entitled to the premium, and, although the rule may result in profit to the insurer, it is but a just compensation for the dangers or perils assumed; besides, the danger incurred may be greater in any one moment than dur-

ing the entire remaining period of insurance, and it
would be extremely difficult, at the least, fairly to ap-
portion the premium."

In determining the circumstances under which un-
earned premiums can be collected, we must then resort
to the express provisions of the contract or to the ap-
plicable statute, which of course is read into and made
a part of the insurance contract: Neel, Insurance
Commissioner, v. Williams et ux., 158 Pa. Superior Ct.
478, 483 (1946) ; 44 C. J. S. 1214, §302; 1 Couch, In-
surance, sec. 150.

The Insurance Company Law, sec. 804, 40 PS §914,
reads, inter alia:

"Mutual insurance companies, other than mutual
life companies, may insert, in any form of policy pre-
scribed by the law of this Commonwealth, any provi-
sions or conditions required by its plan of insurance
which are not inconsistent or in conflict with any law
of this Commonwealth."

Section 807 of that law, 40 PS §917, provides that
domestic mutual fire insurance companies are not re-
quired to maintain any unearned premium reserve,
as contrasted to other mutual insurance companies and
domestic stock companies. In other words, there is no
statutory liability imposed upon domestic mutual fire
insurance companies by virtue of setting up a reserve
for unearned premiums, whereas the contrary is true
in the case of other mutual insurance companies and
domestic stock companies.

Since a domestic mutual fire insurance company is
not required to maintain any unearned premium re-
serve, and therefore has no statutory liability for un-
earned premiums under the provisions of section 807,
it is entirely free, under the provisions of section 804,
to state in its contract the conditions and circum-
stances under which, upon cancellation of a policy,
the unearned premiums are returnable. Such company,

of course, is subject to the requirement under the latter section that a copy of the form of its policy must be duly filed with the Insurance Commissioner for approval.

The policy involved in these proceedings makes the following provisions with respect to the return of unearned premium:

"Cancellation of policy. This policy shall be cancelled at any time at the request of the insured, in which case the Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by the Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premiums above the pro-rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The policy thus provides for the cancellation of the policy at either the instance of the insured or of the company. It states the circumstances, the contingencies and the conditions under which such cancellation may take place, and then further provides for the refund of unearned premium upon the fulfillment of those conditions. The general rule is that the cancellation provisions of an insurance policy must be strictly followed: Pomerantz v. Mutual Fire Insurance Company, 279 Pa. 497, 499 (1924); Letvin v. The Phoenix Insurance Company of Hartford, Connecticut, 91 Pa. Superior Ct. 422, 426, 427 (1927); Davison v. The London & Lancashire Fire Insurance Compnay of Liverpool, England, 189 Pa. 132, 136 (1899); Hendricks v. Continental Insurance Company of New York, 121 Pa. Superior Ct. 390, 394, 395 (1936); Faramelli et al.

v. Potomac Insurance Co., etc., 346 Pa. 228, 232 (1943).

Exceptant's rights to refund of the unearned premium of his policy could only be established by showing that the provisions of the policy relating to cancellation and the return of such unearned premium have been strictly complied with. A strict compliance with the cancellation clause required such cancellation to be either by the company or by the insured. In our judgment the dissolution of this company by virtue of the order of this court did not affect such a cancellation. It was a cancellation by operation of law and not by the voluntary act of either of the parties to the contract: 44 C. J. S. 698, §129(b); Dean and Son's Appeal, 98 Pa. 101, 104 (1881); Law v. Waldron, 230 Pa. 458 (1911).

To hold that cancellation by virtue of the court's order of dissolution is equivalent to a cancellation by the company, as argued by exceptant, would be to do violence to the plain meaning of the insurance contract. Where the language of an insurance policy is clear and unambiguous, it must be construed in accordance with the accepted and plain meaning of the words thereof: Topkis et ux. v. Rosenzweig et al., 333 Pa. 529, 531 (1939); Skelly v. Fidelity & Casualty Co. of N. Y., 313 Pa. 202, 205 (1933); Ehrlich v. United States Fidelity & Guaranty Co., 356 Pa. 417 (1947). It is not the function of the court to rewrite the policy for the contracting parties: Topkis et ux. v. Rosenzweig et al., supra, 532; Urian v. Scranton Life Insurance Company, 310 Pa. 144 (1933).

It is our view that we cannot distort the meaning of the language used in this company's policy. Provision is made only for the return of the unearned premium in the event of cancellation either by the insured or the company. The insurance contract in this case will not support a claim for unearned premium where the

policy was cancelled by virtue of this court's order of dissolution, due to the insolvency of the company.

Our attention has been called to Commonwealth ex rel. v. Guardian Fire Insurance Company of Pennsylvania (No. 1), 65 Pa. Superior Ct. 203 (1916). This case involved claims against the receiver of an insolvent stock fire insurance company. We have carefully examined the record in this case. The question as to the validity of the claims for unearned premiums does not appear to have been a matter of direct contest in the case. An examination of the auditor's report indicates that it was conceded by the interested parties that these claims were payable. The matter did not go to the Superior Court on the question of whether or not such claims for unearned premiums were valid claims. The question before the appellate court was the liability of certain agents for the repayment to the receiver of commissions which they had collected on the unearned premiums. It may be argued that it was implicit in the court's determination that policyholders had the right to the return of unearned premiums where a stock fire insurance company became insolvent. But certainly, having in mind the record before the court, the case could not be considered as laying down the general principle that policyholders of an insolvent mutual fire insurance company, with assessment liabilities under their policies, have the right to claim unearned premiums.

Dean and Son's Appeal, supra, was also cited on behalf of exceptant. But here the main point at issue appears to have been the right to present a claim for a fire loss which occurred subsequent to the date of dissolution, the court's language concerning the claim for premium due at the time of insolvency being entirely obiter. We cannot find that a claim was presented for the amount of premium due at the time of

the insolvency of the company. It might be noted that this case involved a stock company.

The following cases in other jurisdictions support the recommendation of the statutory liquidator that claims for unearned premiums subsequent to date of dissolution should be disallowed: Standard Printing & Publishing Co. v. Bothwell et al., 143 Md. 303, 122 Atl. 195 (1923) ; Johnson et al. v. House, 131 Ark. 113, 198 S. W. 876 (1917) ; Dewey v. Davis, 82 Wis. 500, 52 N. W. 774, 775 (1892) ; In re Wisconsin Mutual Insurance Company, 247 Wis. 485, 19 N. W. (2d) 889, 891 (1945) ; Gleason et al. v. Prudential Fire Insurance Co., 127 Tenn. 8, 151 S. W. 1030 (1912) ; Buck v. Ross et al., 59 S. D. 492, 240 N. W. 858 (1932).

The basic principle underlying the rule enunciated in the foregoing cases is well stated in Johnson v. House, supra, as follows:

"Cash paid for premiums and the premium notes constitute their (mutual companies') assets and the members are in a way stockholders. Hence so long as the company has outstanding debts its insolvency gives no right to a policyholder to recover a premium paid or to avoid the payment of a premium note."

Our attention has been called to Tuttle v. State Mutual Liability Insurance Co., 2 N. J. Misc. 973, 127 Atl. 682, 687 (1924). This case does not support exceptant's contention. The policy there provided that the policyholder is entitled to the return of the unearned premium upon the appointment of a receiver. Here the policy contains no such provision.

Likewise, our attention has been directed to Federal Union Surety Company v. Flemister, 95 Ark. 389, 130 S. W. 574 (1910). The court's ruling therein does not in our judgment necessarily differ from our conclusion in this case. In that case a foreign mutual insurance company was doing business in the State of Arkansas, and under the applicable statute such com-

pany had the same status and liability as a stock company. It is apparent that in case of insolvency, a policyholder of a mutual fire insurance company with assessable policies outstanding should stand on a different footing from a policyholder in a stock company. A policyholder of a stock company, in the event of insolvency, might well be considered a creditor of the company, particularly if under the statute an unearned premium reserve had been set up or the policy made any provision for repayment of the unearned premium. In the event of insolvency of such a stock company, it could well be considered that the company has broken its contract with the policyholder and would be indebted for the unearned premium.

However, where there is an insolvency on the part of a mutual fire insurance company with assessable policies outstanding, it must be borne in mind that the policyholder by his contract has agreed to pay additional sums to discharge the company's liabilities. Hence, that policyholder should not be permitted to reduce the assets by presenting a claim for the unearned premium on his policy subsequent to the date of insolvency for the fundamental reason that it would be wholly illogical and unjust to permit such policyholder to deplete the assets of the company, when by his contract he was bound to supplement those assets. We think the weight of authority in other jurisdictions supports our views in this respect.

Under the mutual plan of insurance where a member is contingently liable for an amount in addition to the original premium, and it becomes established that a contingent sum is necessary in order to pay losses and expenses, the entire original premium should in that event be considered as fully earned, unless it is otherwise provided by the contract of insurance. In such case, the policyholder's claim for so-called unearned premiums must necessarily be nonexistent.

For the foregoing reasons, we have reached the conclusion in this case that exceptant's claim against the statutory liquidator for the unearned premium on his policy subsequent to November 23, 1947, should be disallowed.

And now, April 10, 1950, the exception of Roy E. Shellenberger, the policyholder, to the statutory liquidator's petition for assessment order is hereby overruled; and in accordance with the prayer of the petition it is ordered that:

Members and policyholders of the Urban Mutual Fire Insurance Company of Pennsylvania (dissolved), who had cash mutual fire or automobile policies in force during all or part of the period from November 24, 1946, to November 23, 1947, inclusive, upon which a cash premium was charged, pay to the Insurance Commissioner of the Commonwealth of Pennsylvania, as such statutory liquidator of the Urban Mutual Fire Insurance Company of Pennsylvania (dissolved), an assessment equal to the earned premiums chargeable to that part of the period from November 24, 1946, to November 23, 1947, inclusive, when said policy or policies were in force; provided that where members and policyholders had paid assessments on cash mutual automobile policies under the company's invalid assessment levy of October 25, 1947, the statutory liquidator is authorized to return or to credit to said members and policyholders such assessment payments after deducting or charging the amounts levied under the present court assessment order;

Members and policyholders of the Urban Mutual Fire Insurance Company of Pennsylvania (dissolved), to whom assessable premium note policies were issued on or after August 25, 1945, pay to the Insurance Commissioner, as such statutory liquidator of the Urban Mutual Fire Insurance Company of Pennsylvania (dissolved), an assessment equal to, but not in addition to, the amount shown in the premium note, provided that

the statutory liquidator shall allow as credits against the amounts herein assessed on the members and policyholders, payments already made, either to the company or to the statutory liquidator, of the 1945, 1946 and 1947 company assessments on the assessable premium note policies.

All of these assessments are herein ordered for the purpose of paying claims, expenses and other legal obligations of the dissolved company that were unpaid at the date of dissolution, together with the expenses of liquidation; and the statutory liquidator is hereby authorized and directed to levy and collect the assessments. Any excess over and above the amount required for payment of the above claims and expenses, including the computing of the pro rata liability of each member and policyholder, shall be returned pro ratably to the members and policyholders from whom collected.