The defendant company insured taxicab and jitney bus owners against liability. For the history of how this insolvent *Page 539 
mutual insurance company landed here, see 112 N.J. Eq. 523.
The receiver now petitions for leave to assess the two thousand four hundred policy holders upon their contingent liability under their policies and the statute, to put him in funds to pay losses. Upon the return of the order to show cause a few appeared and objected to his method. Ordinarily the matter would be referred to a master, but they asked the court to hear their objections.
Section 6 of the Insurance act of 1902 as amended Cum. Supp.Comp. Stat. p. 1574 provides:
"Every person insured by any such company shall be a member thereof while his policy remains in force. Every such company shall in its by-laws and policies fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by its available cash funds, but such contingent liability shall not be less than an amount equal to and in addition to the premium written in the policy. The liability of any policy holder to pay his proportional part of any assessments which may be levied by the company on account of losses and expenses incurred while he was a member shall continue so long as there are outstanding any obligations incurred during the term of his membership."
The company's by-law is a paraphrase. It does not fix the amount of the contingent liability; nor does the policy. The assessable sum is, consequently, an amount equal to the premium, the minimum fixed by the statute.
Claims exceeding $900,000 have been presented to the receiver. More than $600,000 are unliquidated claims for personal injuries, of which three hundred and eighty-six are in litigation and three hundred and twenty-two suits may be expected. Based on the company's experience, at least $158,306.59 will be required for their satisfaction. Accepting this estimate of losses, with the fixed liabilities, the debts are:
Judgments against policy holders ........................... $247,556.51
Claims for unearned premiums ............................... 14,225.74
Claims for counsel fees .................................... 1,750.00
Miscellaneous claims ....................................... 6,753.36
Reserve for unliquidated claims ............................ 158,306.59
 ____________
 $428,592.20
 *Page 540 
To this must be added:
Interest on fixed claims (estimated) ....................... $50,000.00
Costs of defending suits (estimated) ....................... 30,000.00
Court costs of prosecuting suits for recovering assessments
 (estimated $15,000) and administration expenses
 (estimated $40,000) ...................................... 55,000.00
 ___________
 $563,592.20

An explanation: After the banking commissioner took possession and up until he turned the administration over to this court, he defended all actions against policy holders. That course was discontinued by the receiver, under the court's direction, and accounts for the claimant's charges of $1,750 for counsel fees laid out by them in their defense and for $30,000, an approximation of charges by claimants for defending suits against them now pending and to be brought.
The items, $15,000 for costs of suit to be brought by the receiver to recover assessments, and $40,000 for administration expenses are deemed fair approximations. It will take some more years for the winding up process. Suits will have to be brought on the assessment from those of the two thousand four hundred policy holders who refuse and who are able or the receiver feels may be compelled to pay.
The receiver has assets estimated at $78,000, so that approximately $500,000 will have to be forthcoming to pay debts and to close the estate, and this is to be realized from earned premiums during the respective years of losses, viz.:
 Earned Premiums Losses
1928 ............................... $270,547.16 $81,037.09
1929 ............................... 264,424.61 131,765.82
1930 ............................... 263,363.80 178,987.10
1931 ............................... 10,661.05 5,957.36
 _____________ _____________
 Total ...................... $808,996.62 $397,747.37

It is apparent that an one hundred per cent. assessment will yield but a fraction of the liabilities, for most of the members, policy holders, mostly taxi drivers, barely earning a living, are financially irresponsible; many cannot be found *Page 541 
and others have withdrawn from the occupation. The receiver's only hope of collection is from a few, and from the comparatively few bus owners with routes; and he anticipates not more than $200,000.
It is objected that to discount the collection of assessments of irresponsible members places a burden upon solvent members not warranted by the statute as read into and forming a part of their contract to pay contingent liabilities. The "contingent mutual liability of its members for the payment of losses and expenses not provided for by its available cash funds," fixed by the statute, though proportional contemplates deficiencies in collections resulting from insolvency of members and is an appropriate item in the assessments. In this aspect the mutual undertaking of the members resolves itself into a limited joint liability. Bangs v. Gray, 12 N.Y. 477; Rosenberger L. Co.
v. Washington Mutual Fire Insurance Co., 87 Pa. 207; Wardle v.Townsend, 75 Mich. 385. The cases dealing with the several liability of stockholders of national banks (United States v.Knox, 102 U.S. 422, and others there cited) are not in point.
Objection is made to the items reserved for unliquidated claims, $158,306.59, as mere guesswork. It is actuarial, and calculated by one whose qualifications are conceded, based upon the company's experience during its five years' existence. It is an appropriate item in the assessment. Davis v. Parcher J. A. Stewart Co., 82 Wis. 488; Hummel Co.'s Appeal, 78 Pa. 320.
If the receiver should be required to wait until all claims are established by judgment, his opportunity for collecting the assessments would constantly lessen through disappearance, insolvency or the like of the members.
The present proceeding is an ascertainment of the defunct company's assets and liabilities, and a determination of the share each policy holder is to contribute to meet debts. In levying an assessment the receiver acts in the stead of the directors, under the direction of the court. The decree fixes the rate of liability, not the responsibility of members. Responsibility is to be determined at law in suits to recover the assessments, where all defenses to responsibility may be invoked; *Page 542 
the assessment is conclusive as to the amount of liability only.McDermott v. Woodhouse, 87 N.J. Eq. 615.
The receiver urges that the collection of the assessments may be prosecuted in this court and he cites Tuttle v. StateMutual Liability Insurance Co., 2 N.J. Mis. R. 973;127 Atl. Rep. 683, where the assessment was enforced by sequestration. Upon what legal theory this summary measure was taken is not found in the opinion. It is said "it worked" but that does not certify that it was lawful. Recovery may be had in this court by bill to declare an assessment and by decree to enforce it, only, if equitable elements are involved calling for our jurisdiction.Easton National Bank v. American Brick and Tile Co., 70 N.J. Eq. 722.
Otherwise the contract, of which the assessment is but the measure of damage and carries no personal condemnation, must be vindicated in the common law courts. McDermott v.Woodhouse, supra.
The receiver's proposed assessment is for losses by calendar years. It is objected that, as each policy holder is liable only for losses occurring during the life of his policy (ColumbiaFire Insurance Co. v. Kinyon, 37 N.J. Law 33) it is inequitable to levy for losses during a period of the calendar year when he was not a member. The policy years of the two thousand four hundred policies overlapped. There were daily additions and withdrawals. Over seven hundred claims have been filed with the receiver; several hundred claims are in litigation and others may yet be instituted. The accounting work in connection with the preparation of this assessment is a volume of many pounds and represents an investment of probably $10,000. If the objectors' assessment theory be adopted with respect to every loss which has been sustained, the amount realized from the assessment will not be sufficient to pay for the accounting services required to levy the assessment. In an assessment as we have here, such an exactitude would defeat assessment. It is sufficient if the assessment is based upon a fair method of calculation, is equally applied, and is substantially correct. If a policy holder suffers by a charge of liability for part of his calendar year, before or after his membership, compensation is to be *Page 543 
found in relief from liability for losses sustained during the life of his policy in the overlap of his calendar year. Assessments for losses by calendar years is not objectionableper se. The method proposed by the receiver is the only practical one and if any policy holder finds himself aggrieved he may bring on his complaint for adjustment on exceptions to the assessment. The plan of the receiver is approved.
This further argument is made by the bus-owner members. Under an "Act concerning auto buses commonly called jitneys and their operation in cities," approved March 17th, 1916 (Cum. Supp.Comp. Stat. p. 2012), insurers against liability of owners of such vehicles are obliged to post with the department of banking and insurance $50,000 in securities to be held for the benefit of persons injured by buses. The securities have been turned over to the receiver and they are counted in in his assets of $78,000. Vice-Chancellor Buchanan, in Tuttle v. State Mutual LiabilityInsurance Co., supra, held that the fund was in trust for those injured by buses, and, of course, for the indemnity of bus owners. That is immaterial at this time. Segregating the bus-owner members' liability and crediting the amount, an one hundred per cent. assessment will not cover the losses covered by that type of policy.