People ex rel. Ernest Palmer, Director of Insurance of the State of Illinois. Henry G. Miller, Receiver for Central Mutual Insurance Company of Chicago, Appellee, v. Central Mutual Insurance Company of Chicago, Appellant.

Gen. No. 40,300.

Opinion filed February 27, 1939.

MYER N. ROSENGARD, of Chicago, for appellant.

LLOYD C. WHITMAN, of Chicago, for appellee.

· MR. JUSTICE FRIEND delivered the opinion of the court.

Central Mutual Insurance Company of Chicago, defendant, seeks the reversal of an order entered in the circuit court approving the receiver's first report and account in an insurance liquidation proceeding filed by the director of insurance of the State of Illinois.

It appears that on January 8, 1937, the attorney general, at the request of Ernest Palmer, director of insurance, filed a petition in the circuit court, pursuant to an act in relation to delinquent insurance companies, approved June 26, 1925, in force July 1, 1925, and subsequent amendments thereto (par. 105, ch. 73, Ill. State Bar Stats. 1935) to liquidate the defendant company, because of its alleged insolvency. January 11, 1937, the court entered an order finding the company insolvent and that sufficient cause existed for the appointment of a receiver to take possession of its assets and to liquidate its business; that the receiver, when appointed, should enter into a bond in the sum of $50,000, with sureties to be approved by the court, and should immediately take possession of the assets of the company and proceed to liquidate its affairs. Accordingly, Henry G. Miller was appointed by the insurance commissioner as receiver, and after filing his bond, he took possession of the office of defendant company and proceeded to marshal and liquidate its assets.

January 12, 1937, the receiver had leave to employ Lloyd C. Whitman as his counsel, and thereafter Mr.

Whitman entered his appearance in the cause. During the first 10 months of his administration the receiver and his counsel prepared and presented numerous petitions, pertaining to the administration of the estate and the liquidation of defendant's assets, and had orders thereon authorizing the settlement and compromise of claims, the foreclosure of mortgages and other matters pertaining to the liquidation and marshaling of the company's assets.

April 7, 1937, the receiver filed his petition seeking compensation on account for himself and his attorney for services from January 11, 1937, to March 15, 1937, alleging that no payments on account of fees had been made to the receiver or his attorney; that on and for upward of 2 weeks after January 11, 1937, the receiver's entire time, often including nightwork and work on holidays, was completely occupied handling company accumulated and incoming mail, telegrams and long distance and local telephone messages and immediately urgent details of the receivership, and that thereafter until March 15, 1937, the receiver's duties had required "all but a very small part" of the receiver's working hours, which had been from 7 to 9 hours, and sometimes longer a day; that his activities and problems in and outside Illinois required almost daily conferences and co-operation with his attorney; that in the period from January 11, 1937, to March 15, 1937, Mr. Whitman had devoted 217 hours of his own time and provided and furnished 132 hours services of his professional associates (aggregating 349 hours), who were lawyers of ability, pursuant to his employment by the receiver. The petition presented details of the nature and occasions for the professional services rendered, and prayed for the allowance of $3,500 on account of receiver's fees and a like sum to his attorney.

Pursuant to this petition the court, April 7, 1937, made a draft order allowing $3,000 each to the receiver and his counsel on account, the material portions of which are as follows: "that the Court finds that the Receiver and his counsel rendered substantially the services set forth in the petition, and that it is fair and equitable that at this time the Court, without determining the amount ultimately to be allowed herein to the Receiver and his attorney for their services heretofore or hereafter rendered, to authorize the payment by the Receiver of reasonable amounts to himself and to his counsel, chargeable against any fees which may hereafter be allowed to them, respectively, for and on account of their services, past or future, and that the reasonable amount so authorized is $3,000 to each."

Subsequently, December 20, 1937, the receiver filed another petition praying for the payment of moneys to himself and his attorney on account of services, and the court entered another order allowing $3,000 each to the receiver and his counsel on account of services rendered by them from March 15, 1937, to November 30, 1937. The order recited the allowance of fees on account April 7, 1937, and found that the receiver and his attorney had rendered services substantially as set forth in the petition, and that it was fair and equitable at the time, and without determining the amount ultimately to be paid to the receiver or his counsel for services theretofore or thereafter rendered, that the receiver be authorized to pay to himself the further sum of $3,000 and a like sum to his attorney, chargeable against fees which might thereafter be allowed.

December 17, 1937, the receiver filed his first verified report and account, covering cash receipts and disbursements from January 11, 1937, to November 30, 1937, by means of which he sought to advise the court of certain major and outstanding matters involved in the administration of the estate, requiring the continu-

ing and further attention of the receiver, some of which were reflected in one or the other of the 31 petitions theretofore filed by the receiver, and upon which orders of authorization had been entered by the court. The receiver showed his appointment, the filing and approval of his bond, the appointment of Whitman as his attorney, and he set forth in some detail, chronologically, his various acts from the time that he took possession of the defendant's assets and office until November 30, 1937. The detailed items of the report may be briefly summarized as follows: Immediately upon taking possession the receiver examined the affairs and assets of the company, settled many cases involving collateral, and thereby collected $10,937.14, carried on litigation in trial or Appellate Courts as to certain pending cases involving collateral notes and other suits; recovered judgment against St. Paul Mercury & Indemnity Company in the municipal court of Chicago for $15,000, and secured an affirmance of the cause in the Appellate Court for the First District of Illinois, and thereafter settled the cause for $15,000, waiving only interest and costs, which sum was deposited to the receiver's account; that he had pending or in contemplation foreclosure suits on trust deeds securing an aggregate of notes of the principal face value of $74,000; that he had sent out notices for filing of claims pursuant to the court's order to some 29,000 known policyholders and other claimants, and that to and including October 15, 1937, 2,547 claims, aggregating $4,311,806.65, had been filed, and since then more than 30 more claims had been lodged with the receiver, aggregating $44,305.85; that among the total aggregate claims filed was the claim of Lloyds of London, for $117,830.11, for claimed balances of premiums on several reinsurance contracts between Lloyds and the defendant company. The receiver showed that defendant company had been authorized to do

business in 16 States, in some of which receivers had been appointed for the company, where local counsel had to be consulted and employed. Attached to his report was a statement of cash received and disbursements, and vouchers for all expenditures made from January 11, 1937, to November 30, 1937.

Defendant advances two principal contentions for reversal of the order approving the receiver's first report and account. It is first urged that a receiver appointed to liquidate an insolvent insurance company is an administrative and not a judicial officer, whose conduct and administration of the estate is fixed by statute; that the power of the court in such a proceeding is limited and not general, and is governed entirely by the grant of power conferred by the legislature in the Insurance Liquidation Act; that under this act the court has no power or jurisdiction to pass upon his conduct and activities, either by original direction or by ratification or confirmation, except that the court may fix or pass upon compensation to be allowed and paid to and by the receiver to himself, his attorney and other employees; and therefore, all orders entered by the court pertaining to administration and liquidation were void, including the approval by the court of the first report and account of the receiver.

Briefly summarized, the statute in relation to delinquent insurance companies (par. 105 and subsections, ch. 73, Ill. State Bar Stats. 1935) specifies the basis for instituting proceedings to liquidate insurance companies at the instance of the director of insurance, provides for the appointment of a receiver by the insurance commissioner for the purpose of continuing the business or to liquidate the same; that where liquidation is found necessary and advisable, it shall be carried out under the direction of the receiver, who may deal with the property in his own name as receiver or in the name of the company, as the court may direct;

and it provides for the allowance of preferred claims, the bringing of proceedings against foreign insurance companies and for the appointment of agents, clerks, assistants and attorneys, to advise and assist the receiver. Section 11, par. 105 (11), which is urged by the receiver as the basis affording the court jurisdiction to approve his report and account, reads as follows: ''The mode of summoning parties into court, rules of practice, course of procedure, and *powers of the court,* in all cases arising under this Act, shall be the same as in ordinary proceedings in equity in this State, and as by law provided.'' (Italics ours.)

The most recent decision of the Supreme Court of this State, where the powers of the trial court in an insurance liquidation proceeding are expressly passed on, and where such powers were directly in issue, is *People ex rel. Lowe v. Marquette Nat. Fire Ins. Co.,* 351 Ill. 516, decided in 1933. That case arose and was decided under the Insurance Liquidation Act of 1925, before its amendment in 1929. The 1929 amendment changed the original 1925 act in two material respects—(1), it provided that the director of insurance appoint the receiver, whereas the original act designated the director of insurance as liquidator, and (2) in sec. 8 of the original act the director, acting as liquidator, was authorized to employ clerks and assistants, but was not expressly authorized to employ attorneys, and in the 1929 amendment sec. 8 was so changed as to include attorneys and solicitors among those authorized to be employed by the receivers. In *People ex rel. Lowe v. Marquette Nat. Fire Ins. Co., supra,* the question arose whether the trial court had jurisdiction and power to authorize the receiver to employ attorneys and to provide for their compensation, when such employment was not expressly authorized in the act as then written, and it was held that the court had such jurisdiction and power. In discussing the question, the court said (pp. 531, 532):

"They cite in support of this position *Hannah v. Meinshausen,* 299 Ill. 525. That case and others cited deal with the equitable jurisdiction of county and probate courts, which, it is generally recognized, are not courts of general chancery jurisdiction but have only such chancery powers as are conferred by statute. Section 11 of the act declares that the court in which the petition is filed shall have the ordinary equity powers. Circuit and superior courts are courts of general chancery jurisdiction, and as such, quite apart from the statute, have the general powers of the Court of Chancery. Courts of chancery have implied powers to do all things necessary to discharge the functions placed upon them by law. An agency of government intrusted and charged with certain powers must also be held to have been intrusted with ample means for their execution. (*McCulloch v. Maryland,* 4 Wheat. 316, 4 L. ed. 579.) To deprive a court of the power to execute its decrees (referring here to the liquidation decree) is to essentially impair its jurisdiction. Jurisdiction in a court of chancery to enter an order or render a decree includes the power to do that necessary to its execution. (*Riggs v. Johnson Co.,* 6 Wall. 166, 18 L. ed. 768.)"

Defendant relies chiefly on *People ex rel. Palmer v. Niehaus,* 356 Ill. 104, *People ex rel. Palmer v. Peoria Life Ins. Co.,* 357 Ill. 486, and *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150, to sustain its contention that the court lacked jurisdiction to approve the receiver's report and account. The opinion in the *Niehaus* case was filed in 1934. It was there sought by mandamus to compel the respondent, a judge of the circuit court of Peoria county, to expunge an order entered by him appointing coreceivers of the Peoria Life Insurance Co. The attorney general of the State had filed a petition in the name of the People, upon the relation of Ernest Palmer, director of insurance, to liquidate the defendant company. After a decree was rendered,

granting the petition, the director of insurance appointed Charles V. O'Hern as receiver. The court refused to recognize the appointment, and instead, he added to the original decree the order which was sought to be expunged, appointing O'Hern and George A. Shurtleff. The question presented for determination, as stated by the court in its opinion, was whether the court had jurisdiction—"i. e., power to enter such an order of appointment in face of the statutory provision that the appointment should be made by the director of insurance," and it was held that it did not have such jurisdiction because the power to appoint a receiver was lodged by the statute solely in the director of insurance. Although the court employed language indicating that the powers of the trial court in the liquidation proceeding are limited strictly to the provisions of the statute, the only point involved in the case was whether the court could assume the prerogative of appointment vested by the statute in the director of insurance.

In *People ex rel. Palmer v. Peoria Life Ins. Co., supra,* there was involved the same appointment of receivers as in the *Niehaus* case, and also a reinsurance agreement with a new company, made on the application or petition of the additional receiver appointed by the trial court, which was not joined in by the receiver appointed by the director of insurance. Following its decision in the *Niehaus* case the Supreme Court held that the trial court's appointment of the two receivers was invalid, and consequently that the court's approval of the reinsurance agreement on application alone of the additional receiver appointed by it, was erroneous, because title to all the assets of the delinquent insurance company was in the receiver appointed by the director, who was alone authorized to liquidate the affairs of the company. What was said by the court in its opinion with respect to the extent of the trial

court's supervision of the liquidation proceeding was, as in the *Niehaus* case, not necessary to the decision. This was clearly pointed out in the dissenting opinion of Mr. Justice DeYoung.

In *Republic Life Ins. Co. v. Swigert, supra,* it was held that the court had no power to direct the receiver to institute suit against the shareholders to collect their subscriptions to the capital stock, after the company had by contract put it out of its power to collect such unpaid subscriptions, because the receiver in such case had no greater power than the company he represented. Section 9 of the Act of 1874 was substantially identical with sec. 11 of the Act of 1925, and in arriving at its conclusion, the court, after quoting sec. 9 of the statute as it then existed, said that (p. 178):

"It is not a power inherent in the court of chancery, and it is not in conformity with the course of procedure and rules of practice which obtain in ordinary proceedings in equity, for the court to clothe its receiver with power to seize and enforce a property right which belongs only to parties who are not before the court, and who are not asking its assistance." In other words, the court, in construing the provision of the statute giving the chancellor "the powers of courts . . . as in ordinary proceedings in equity," merely held that it was not inherent in a court of chancery to authorize its receiver to seize and enforce property rights belonging to parties who were not asking the court's assistance and who were not before the court.

A careful examination of the *Niehaus* case indicates that the Supreme Court did not overrule the decision in the *Marquette* case, authorizing the court to allow the appointment of counsel by the liquidator, notwithstanding the fact that such power was not expressly given the trial court in the Act of 1925; it only disapproved of the portions of the Marquette opinion describing the liquidator, acting as a receiver, as a

judicial officer, and this, as we view it, has no bearing on the question of the trial court's power to instruct the receiver with reference to his liquidating the business and affairs of the insurance company, pursuant to the decree of liquidation.

More recently we had occasion to pass upon the question of the jurisdiction and power of the chancellor in a *bank* liquidation proceeding under sec. 11 of the Banking Act (Ill. State Bar Stats. 1935, ch. 16a, p. 160 [Jones Ill. Stats. Ann. 10.11]) in *People ex rel. Barrett v. West Side Trust & Savings Bank,* 280 Ill. App. 308. Two petitions were filed by the bondholders' committee in the liquidation proceeding, the first praying for an order of court directing the receiver to resign on behalf of the bank as trustee under the trust deed securing the bond issue, and the second praying for an order of court directing the receiver to turn over certain of the bonds held by the bank and also certain data pertaining to the bond issue. William L. O'Connell, the receiver appointed by the auditor, contended that the trial court lacked jurisdiction to entertain such petitions, because its powers in the liquidation proceedings were expressly limited to the provisions of the bank liquidation statute, and the question therefore arose whether the trial court's jurisdiction in such proceeding was limited to the powers expressly delegated to it in the act. We held that under sec. 11 the receiver was required to resign on behalf of the bank, as trustee, under the trust deed securing the bond issue, and that since there was no specific provision made for enforcing this requirement of the statute, it was inherent in the power of the court to force the resignation. However, as to the second petition, we adhered strictly to the statute and held that the trial court had no jurisdiction to entertain the petition. The Supreme Court in *People ex rel. Barrett v. West Side Trust & Savings Bank,* 362 Ill. 607, affirmed our conclusion that the court had power

to force the receiver's resignation, but went further by holding that the court should also have allowed the second petition, because it was incidental to the powers vested in the receiver in the liquidation of the bank's assets. In view of the similarity between the two acts, we regard this decision of the Supreme Court as an indication that the powers of the court in both bank and insurance liquidation proceedings are not strictly limited to those expressly given by statute, but should be sufficiently broad to permit the effective liquidation of the company in the proceeding brought before the court for that purpose. In discussing the proper construction of the bank liquidation act, the court said (p. 616) : ''If the language employed admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result should be avoided.'' The reason for this construction is obvious. In the case at bar, the court had entered its liquidation decree, and under general equitable principles it ought to have power to control the execution of that decree by giving instructions to the receiver, as important doubtful questions arise in the course of the liquidation; and this power would necessarily be inherent in the court whether the receiver is designated as an administrative or a judicial officer. In the course of liquidation the receiver of a bank or an insurance company repeatedly encounters doubtful questions, requiring the assistance of the court, and it would be absurd to require him to file independent proceedings each time that he seeks the aid and instructions of the court.

In the *People ex rel. Barrett v. West Side Trust & Savings Bank* case, *supra,* the receiver likewise relied on *People ex rel. Palmer v. Niehaus,* 356 Ill. 104, and *People ex rel. Palmer v. Peoria Life Ins. Co.,* 357 Ill. 486. With reference to these two decisions and the con-

tentions made that the receiver is merely an administrative officer, who is not subject to the jurisdiction of the court, the court said (p. 619): "The principal questions presented for decision in those cases related to the power of appointing receivers of insolvent insurance companies."

In *People ex rel. Palmer v. Acme Plate Glass Mut. Ins. Co.*, 292 Ill. App. 275, decided in November, 1937, we recognized the jurisdiction and power of the trial court in an insurance company liquidation proceeding to instruct the receiver in matters relating to his liquidation of the company assets. After a petition had been filed by Ernest Palmer for liquidation and dissolution of the defendant company, an order was issued against defendant to show cause why a receiver should not be appointed. The company filed its answer, and thereafter a decree of liquidation was entered by the court. The director of insurance then appointed a receiver, who in the process of liquidating the affairs of the company procured various orders of court including an order fixing the time and procedure for filing claims, for leave to sell furniture and fixtures, to file an inventory of the assets of the defendant corporation, and to foreclose two real estate mortgages held by the defendant. Subsequently, the first report and account of the receiver was filed and approved by the court, and thereafter another report was filed and approved, and orders were entered authorizing the receiver to sell certain mortgage notes held by defendant and to accept a refunding bond and execute refunding agreements. With reference to these orders, the following was said (p. 283): "As we have stated before, the purpose of the decree is to wind up the affairs of the company, in other words, to liquidate, which, as herein indicated, is to wind up the affairs and adjust the accounts of the company, so that whatever is done after the final decree will 'simply be in enforcement of this decree.'"

The other ground urged for reversal is that the court erred in approving disbursements made by the receiver, particularly as to compensation, without hearing or requiring evidence in support of the necessity, propriety or reasonableness of these expenditures. It is argued that since definite issues were made by the company's answer, the court should have heard evidence to ascertain the character and extent of the services rendered, rather than to have allowed fees on account to the receiver and his counsel, chargeable against any fees which might hereafter be allowed to them. It is specifically urged that no allowance of fees should have been made by the court for services rendered by the receiver and his counsel and employees in connection with the preparation and filing of many of the 31 petitions dealing with the receiver's liquidation; that the receiver improperly abandoned the defense of some 700 or 800 cases, with the result that the estate of the defendant was burdened and became greatly impaired; that payment of the judgment by the St. Paul Mercury & Indemnity Company was not brought about as a result of the activity or effort of the receiver; that the expenditure of between $7,000 and $8,000 for stenographic and clerical services is excessive, in view of the matters involved and the value of the assets; and that various other items of service by the receiver and his counsel were not compensable. We make no comment upon the validity of these objections, except with reference to the abandonment of the numerous suits pending against defendant. These suits were numerous, some 750 in all, over 600 of which were for personal injuries and property damages upon which defendant had written liability insurance. To defend these suits would have required an expenditure for attorneys' fees, court costs, witness fees, etc., in an aggregate in excess of the cash on hand in February, 1937, and the value of the then liquid and immediately

marketable assets of the company. The receiver and his counsel argue that it would have amounted to a preference of certain policyholders over others for the receiver to defend some and not all of these suits, and accordingly it was proposed, and the court ordered, that the receiver defend only pending cases wherever necessary to the recovery of involved collateral.

As to the other objections raised, defendant is not precluded from ultimately being heard as to their validity. The receiver's petitions indicate that extensive and valuable services had been rendered by the receiver and his counsel, for which the allowance on account would not compensate either of them to the extent of the work performed, and the court obviously believed, and was justified in its conclusion, that the $3,000 on account, allowed to the receiver and his counsel under each petition, would only partially compensate them for the services rendered up to that time, and that ultimately a full hearing would enable the court to determine the aggregate amount to be paid to the receiver and his counsel, from which the court would deduct the fees allowed on account. If the sums allowed on account then appear to be disproportionate to the total allowance for services rendered, the court will undoubtedly take that into consideration in making a final order. The receiver's petitions indicate that for a period of more than 2 months, he and his counsel devoted substantially all their time daily to the duties intrusted to them, aggregating some 349 hours on the part of Mr. Whitman and his associates, and subsequently they rendered necessary services in connection with pending foreclosure suits, the filing of claims by policyholders, and various other matters enumerated in the receiver's petitions, for which compensation of $3,-000 on account to the receiver and his counsel on 2 different occasions is not unreasonable. If the various items of service to which defendant specifically objects

are not properly to be included, defendant may ultimately be heard on these objections; but it is evident from the receiver's petitions that sufficient services have already been rendered to justify the allowances made.

For the reasons indicated, we are of the opinion that the chancellor's order approving the first report and account of the receiver and the allowance of fees. on account to him and his counsel, was properly entered, and the order or decree of the circuit court is affirmed.

*Order affirmed.*

BURKE, P. J., and JOHN J. SULLIVAN, J., concur.