People ex rel. Ernest Palmer, Plaintiff, v. Central Mutual Insurance Company of Chicago, Defendant.

Henry G. Miller, Receiver of Central Mutual Insurance Company of Chicago, et al., Appellees, v. Central Mutual Insurance Company of Chicago, and Irving L. Block, Appellants.

Gen. No. 41,490.

Opinion filed January 22, 1942.   Rehearing denied February 4, 1942.

MYER N. ROSENGARD, of Chicago, for appellants.

LLOYD C. WHITMAN, of Chicago, for certain appellee.

BECKMAN, HEALY, REID & HOUGH, of Chicago, for certain other appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Irving L. Block, whose status or interest in this proceeding does not clearly appear of record, but who is characterized as a policyholder, joins in an appeal with the defendant, Central Mutual Insurance Company of Chicago, seeking the review and reversal of an order of the circuit court entered in a proceeding instituted by the attorney general, on request of Ernest Palmer, director of insurance, to liquidate the defendant company because of its alleged insolvency, which authorized and directed the receiver in that proceeding to spread and levy a 100 per cent assessment against its policyholders in an amount of approximately $5,000,000.

The liquidation proceeding had been instituted by petition of the attorney general filed January 8, 1937, pursuant to AN ACT in relation to delinquent insurance companies, etc., approved June 26, 1925, and subsequent amendments thereto (pars. 495–503e, ch. 73, Ill. Rev. Stat. 1935). Shortly thereafter, a decree was entered finding that the company was insolvent, that its liabilities exceeded its assets by approximately $500,000 as alleged in the petition, and that sufficient cause existed for the appointment of a receiver to take possession of its assets and to liquidate its business. Accordingly, Henry G. Miller was appointed as receiver by the director of insurance and at once qualified under his appointment. January 12, 1937, he had leave to employ as his counsel Lloyd C. Whitman, and thereafter the receiver and his counsel entered upon their respective duties, as appears from our opinion on another phase of this proceeding (*Miller v. Central Mut. Ins. Co. of Chicago*, 299 Ill. App. 194), and continued to serve in their respective capacities until shortly before the instant appeal came on for oral argument, when we were first advised that Roy D. Keehn had been substituted for Miller and that Whitman had been superseded by Beckman, Healy, Reid & Hough as solicitors for the receiver.

After the liquidation proceeding had progressed for some 16 months, the receiver in May 1938, filed a verified petition for an assessment against all policyholders who, January 31, 1935, to January 11, 1937, both inclusive, were holders of policies, in an amount of 100 per cent of the premiums stated in the policies. From the essential allegations of his petition, it appears that defendant company had, October 22, 1926, obtained a charter from the State of Illinois and was licensed to do business as a mutual insurance company under the Act of July 1, 1915 (AN ACT to provide for the organization and management of mutual insurance corporations, other than life, pars. 309–332, ch. 73, Hurd's Ill. Rev. Stat., 1915–1916), and authorized to make contracts of insurance against loss or liability arising from the various kinds of casualty or hazard which may be the lawful subject of insurance, except life or fire; that it was provided, among other things, at paragraphs 388, 389 and 390 of the Act of 1915 (ch. 73, Ill. Rev. Stat. 1935), under which it was incorporated, (a) that every policyholder shall be a member of the corporation and entitled to vote; (b) that the by-laws of the company shall provide for a cash premium and may limit the contingent liability of the members to an amount of not less than one nor more than ten times the cash premium expressed in the policy, the maximum contingent liability to be plainly stated as part of each policy; (c) and that no corporation shall issue a policy for a cash premium without contingent liability unless it is possessed of a surplus of at least $100,000 and not less than the capital required of domestic insurance companies doing the same kind of business.

The petition further alleged that the corporation adopted by-laws pursuant to statute which contained, among others, the following provisions: Article III, that each policyholder shall be entitled to one vote, and that membership in the company automatically

ceases upon termination of the policy by cancellation, lapse, forfeiture for nonpayment or otherwise; Article VIII, that the board of directors shall exercise all corporate powers not prohibited by statute or the by-laws, shall have power to prescribe when and how payment of premiums and assessments shall be made, when policies shall lapse or be subject to forfeiture, and how they may be reinstated; but that the directors shall have no power to issue policies not providing for a cash premium deposit nor shall they have power to waive the same, nor shall the contingent liability of any member be more than an amount equal to such cash annual premium deposit and which shall be expressed in the policy.

The receiver's petition further alleged that defendant company engaged in business until January 11, 1937, and maintained its principal offices in Chicago; that it qualified in and issued policies to residents of some 16 States and the District of Columbia; that it issued 100,000 policies of insurance, in each of which it was provided that "The contingent liability of the assured hereunder is limited to one time the premium named herein and no more," and "The assured is given and hereby accepts notice that by virtue of this policy he is a member of the Central Mutual Insurance Company of Chicago."

It is further alleged that July 1, 1925, and since that time there was in full force and effect a legislative act entitled, "An Act in relation to delinquent insurance companies, etc." (pars. 495–503e, ch. 73, Ill. Rev. Stat. 1935); that in July 1937, this act was repealed by another act of the legislature, entitled "An Act to revise the law relating to insurance and to repeal certain Acts therein named," commonly known as the Illinois Insurance Code (pars. 613–1091, ch. 73, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.676 *et seq.*]); that under section 1061 of this statute, found in ch. 73, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.1124],

it is expressly provided that the repeal of any law by the code shall not affect any rights accrued or established or any liability or penalty incurred under the provisions of any repealed law prior to the repeal; and that under par. 833 (ch. 73, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.896]) every proceeding heretofore commenced under the act of 1925 shall be continued as if the act of 1925 had not been repealed.

Following these allegations, the petition recites the commencement of the liquidation proceeding in 1937, the entry of an order finding, among other things, that sufficient cause existed for the appointment of a receiver to take possession of the defendant's assets and to proceed with the liquidation; that in February 1937, the court entered an order directing that claims be filed with the receiver, and publication of notice thereof to policyholders; that in pursuance to the order and notice, there were filed with the receiver, up to and including April 14, 1938, 2644 claims, 29 of which were for unliquidated damage or loss in amounts not stated, but estimated at an aggregate of approximately $138,000; that taking into consideration these 29 claims, the total claims filed would aggregate some $4,500,000, classified approximately as follows:

| | |
|---|---:|
| loss claims | $4,000,000 |
| investigation and adjustment claims | 240,000 |
| commission and reinsurance claims | 125,000 |
| return insurance claims | 95,000 |
| miscellaneous claims | 92,000 |

Before filing his petition for assessment against policyholders, the receiver employed Conover & Green, consulting actuaries, auditors and accountants, especially experienced in insurance accounting work, to assist him in gathering information and data in connection with the assessment of policyholders, the proper claim reserve, the fair value of the assets, and the necessary rate of assessment against policyholders. Pursuant to the employment, the auditing firm made

an exhaustive and detailed report dated April 21, 1938, which is used as the basis for the assessments sought. Their report indicated that the value of defendant's assets, as of January 11, 1937, exclusive of any claim against London Lloyds under a reinsurance contract, aggregated $253,274.34; that the total liabilities of the company, estimated and stated as accurately as was practical at the time, were $3,272,667.44; that throughout the period from February 1, 1935, to January 11, 1937, both inclusive, defendant was not possessed of assets equal to the unearned premium reserve and other liabilities, and that from time to time during this period there was a deficiency in assets and an excess of liabilities over assets of $4,000,000; that as indicated by the premium account on the books of the company as of January 31, 1935, and from February 1, 1935, to January 11, 1937, there were outstanding and in force and effect policies of insurance written and delivered to 40,000 or 50,000 separate policyholders, residents of one or another of 16 States and the District of Columbia, in the aggregate of cash premiums equal to $5,372,138.20; that 20 per cent of these policies were issued to residents of Illinois and the balance of 80 per cent to residents of the other 15 States and the District of Columbia; that it will probably be impossible to locate 25 per cent of the policyholders; that one-half of 1 per cent will probably pay an assessment without suit; that a large percentage will be found to be financially irresponsible; that collection of assessment by suit will necessitate employment, at a large expense, of a great number of lawyers, in and out of the State, who would probably charge 25 to $33\frac{1}{3}$ per cent of the amount collected, as a contingent fee; that probably less than 20 per cent of the total assessment of $5,372,138.20 would prove collectible; and that in view of these circumstances, a 100 per cent assessment is indicated to be necessary. The petition asks that the director of

insurance, defendant and all parties in interest be ruled to answer by a day to be fixed by the court, that the court approve and confirm the levy by the receiver and levy and authorize and direct the receiver to levy an assessment on all policyholders who on January 31, 1935, to January 11, 1937, both inclusive, were holders of policies, in an amount of 100 per cent of the premium stated in the policies, and that such other and further relief be afforded in the premises as to the court should seem meet.

June 7, 1938, the Central Mutual Insurance Company moved to strike the receiver's petition, praying for an assessment of its policyholders, setting forth the following reasons in support of its motion: (1) that the receiver (under the Act of 1925) had no power, right or authority to levy any assessment against policyholders of mutual insurance companies; (2) that the court had no jurisdiction or power to enter any order either directing the making of a levy or confirming a levy made by the receiver; (3) that the only provision for assessment in any of our legislative enactments prior to 1937 appears in the act of 1915 (Ill. Rev. Stat. 1915–1916, ch. 73, pars. 309–332), under which the defendant company was organized, and under that act the company is authorized and directed to levy an assessment, but only as a going institution, and its right so to do ceased when the petition was filed in the case at bar; and that there was no statutory provision for the levy of any other kind of assessment other than by the company itself as a going concern; (4) that the court had no jurisdiction of the subject matter, or if it did have such jurisdiction, it exceeded its jurisdiction in entering the assessment order, thus rendering the order void; (5) that it appears from the petition that the claims against the estate had not been adjudicated, since the receiver had filed no report on claims, and therefore the petition was based upon mere estimates and did not allege sufficient facts upon

which an assessment, as prayed, could be levied; (6) that any levy of assessment would be in violation of section 10 of Article I, section 2 of Article IV, and the 14th amendment to the Constitution of the United States, and also violative of sections 1, 2, 5 and 14 of Article II of the Constitution of the State of Illinois of 1870; (7) that under the provisions of the new Insurance Code of this State, which became effective July 1, 1937, any levy of assessment, if such levy could be made in the case at bar, could be made only under that act and not under the Act of 1925, and that under the new Insurance Code such assessment must be made by the director of insurance and cannot be made by a receiver.

The court overruled defendant's motion to strike the petition and thereafter, in obedience to the order entered, defendant filed its answer, reserving all the points and issues made and raised by its motion to strike; and it also joined issue with the factual statements contained in the petition by putting the receiver to proof of the facts alleged. The cause was then referred to Leonard C. Reid, one of the masters in chancery of the circuit court, whose report contained detailed findings as to the value of the assets and the amount of the liabilities of defendant company, and recommended that the receiver be permitted and directed to levy the assessment, as prayed for in his petition. After argument and hearing, defendant's exceptions to the master's report were overruled, the report was approved, and the receiver was authorized and directed to make an assessment; and it appearing from the order entered that the receiver thereupon made such levy of assessment by the filing of a written levy memorandum or demand, the levy so made was approved and confirmed.

Although defendant relies chiefly on the legal questions presented, it assigns as error (1) that the assessment was spread and levied prematurely and before

"the probable liabilities over the reasonable value of the assets have been ascertained" and also (2) "that the assessment order [was] spread against all policy-holders as a class, regardless of the type of policy held." Its counsel says that he does "not propose . . . to challenge this evidence" adduced upon the hearing before the master, but takes exception only "to the method used at arriving at liabilities for the purposes of the assessment," and that "if the method used by the Receiver's auditor was the legal method, then we concede that the evidence discloses that the amount of the assessment is not challenged." This requires brief consideration of the method employed by the receiver as a basis for the assessment. Paragraph 833, which became effective July 1, 1937, and superseded the Liquidation Act of 1925, under which these proceedings were originally instituted, provides that "Every proceeding heretofore commenced under 'An Act in relation to delinquent insurance companies, associations and societies,' approved June 26, 1925, . . . shall be continued as if said Act had not been repealed, but assessments against members or subscribers . . . may be made in accordance with section 207 [par. 819]." (Ill. Rev. Stat. 1937, ch. 73 [Jones Ill. Stats. Ann. 66.896].) Under paragraph 819 of the Insurance Code (ch. 73, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.882]), the assessment is required to cover "the excess of the probable liabilities over the reasonable value of the assets, together with the cost of collection and probable percentage of uncollectibility thereof." Defendant argues that in arriving at a definition of the words "probable liabilities," account should be taken of the fact that creditors, in filing claims with receivers, are likely to seek amounts in excess of their actual losses; that in connection with suits commenced against assureds, the amount of *ad damnum* does not necessarily represent the recovery that will ultimately be made, and that it

was incumbent upon the receiver, in the time that elapsed between the adjudication of defendant as insolvent and the filing of the petition for assessment, to ascertain what the actual liabilities were. The procedure indicated was manifestly impractical, unless it be conceded that the receiver should have delayed the assessment until further hearings before the master, extending over long periods of time, perhaps years, would disclose actual liabilities; nor is such a procedure required under the authorities. In *Lincoln Bus Co. v. Jersey Mut. Casualty Ins. Co.*, 112 N. J. Eq. 538, 165 Atl. 112, it was argued that to discount the collection of assessments of irresponsible members placed a burden upon solvent members not warranted by the statute as read into and forming a part of their contract to pay contingent liabilities, but the court affirmed a 100 per cent assessment upon a similar showing that it would yield but a fraction of the liabilities, since most of the policyholders were either financially irresponsible or could not be found, and concluded by saying that ''If the objectors' assessment theory be adopted with respect to every loss which has been sustained, the amount realized from the assessment will not be sufficient to pay for the accounting services required to levy the assessment. In an assessment as we have here, such an exactitude would defeat assessment. *It is sufficient if the assessment is based upon a fair method of calculation, is equally applied, and is substantially correct. . . . The method proposed by the receiver is the only practical one and if any policy holder finds himself aggrieved he may bring on his complaint for adjustment on exceptions to the assessment.*'' (Italics ours.)

It must be conceded, of course, that probable liabilities and probable value of assets should be considered by the receiver so far as necessary to enable him, in good faith, to come to an honest conclusion as to the need of an assessment and the amount of assessment

needed, but in this proceeding it was never contended that the estate in liquidation would pay its creditors any substantial percentage on their claims since, figured at best, there would be a deficiency in excess of $500,000. Defendant's counsel evidently recognized the inherent difficulties in collecting the assessments and the probability that dividends to creditors would be negligible, for in opposition to the receiver's motion to dismiss the appeal, while the case was here pending, he said that "The usual dividend declared in these types of cases is very small, if at all. Experience teaches that in most cases no dividend is paid." Under the circumstances, we think the method employed by the receiver and the necessity for levying a 100 per cent assessment were amply justified.

The other contention, that the assessment order against all policyholders as a class, regardless of the type of policy held, was erroneous, is likewise untenable, since defendant was engaged in writing only one class or kind of insurance, namely, automobile insurance, which included liability, property damage, collision, theft and fire insurance. Although incorporated to write other types, its business was confined only to the one class of insurance set forth.

The remaining and paramount question presented is whether the receiver had power to levy the assessment and the court jurisdiction to authorize and direct him to do so. It is first urged that the court had no power or jurisdiction to enter the order authorizing and directing the receiver to levy the assessment or, if such jurisdiction existed, the order of assessment was an excessive exercise thereof, beyond the powers of the court, and therefore void. This contention is predicated upon the fundamental rule that chancery courts, in bank and insurance liquidation proceedings, under the statutes are not vested with the usual broad powers of chancery courts, but are limited in jurisdiction to such powers as are conferred on them by statute and

any additional powers that may be reasonably incidental to and inferred from the legislative grant. The same contention was made in the former appeal (*Miller v. Central Mut. Ins. Co. of Chicago*, 299 Ill. App. 194), wherein the jurisdiction of the court was challenged to pass upon the activities of the receiver in the liquidation of this same company pertaining to the entry of orders affecting matters of administration by the receiver. Counsel there relied chiefly on *People v. Niehaus*, 356 Ill. 104, *People v. Peoria Life Ins. Co.*, 357 Ill. 486, and *Republic Life Ins. Co. v. Swigert*, 135 Ill. 150, all of which were insurance liquidation proceedings; and these decisions are again urged on this appeal as supporting defendant's present challenge of the court's jurisdiction. We discussed and distinguished those cases in our former opinion and reached the conclusion, supported by other and more recent decisions of the Supreme Court of this State, that the powers of the chancellor are not so limited as defendant asserts, but should be sufficiently broad to permit the effective liquidation of the company in proceedings brought before the court for that purpose. Having entered the liquidation decree, the court should have power to control the execution of that decree by giving instructions to the receiver as important doubtful questions arise in the course of liquidation; and this power, we think, is necessarily inherent in the court whether the receiver, because of his appointment by the director of insurance instead of the court, is designated as an administrative or a judicial officer; for after his appointment he becomes an officer of the court, whether administrative or executive (*People v. Marquette Nat. Fire Ins. Co.*, 351 Ill. 516). The provision of paragraph 503-b of the Act of 1925 (ch. 73, Ill. Rev. Stat. 1935), that the "*powers* of the court, in all cases arising under this Act, shall be the same as in ordinary proceedings in equity in this State . . . ," adds force and authority to this conclusion. (Italics ours.)

The Liquidation Act of 1925 makes no provision for assessments by the receiver. Because of this omission in the statute and in harmony with its contention that the court had no jurisdiction over the receiver, except as specified in the statute or impliedly conferred on the court, and therefore no power to authorize or direct him to levy an assessment, defendant takes the position that the receiver could not act independently of the court and levy the assessment; and since the board of directors, which might have ordered a levy while the company was still doing business, was divested of its right to act by reason of the liquidation decree, which defendant says was "tantamount to a cancellation of the right to do business," no levy could be made except by the director of insurance, who failed or refused to do so; and it is urged that even if the court had authority to direct the levy, the order should have provided that it be made by the director of insurance, as provided in paragraph 819 of the Insurance Code of 1937 (ch. 73, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.882]), and not by the receiver.

The attitude of the director of insurance with respect to a levy is disclosed by a letter which he wrote to defendant on November 28, 1936, some six weeks before the liquidation proceeding was filed. It appears that prior thereto defendant had submitted to the directors a plan for rehabilitation of the company, and for the reasons assigned by the director in his letter he exercised the discretion vested in him by the statute of relieving the company of levying an assessment and allowing it to proceed with its plan. Obviously, the directors did not exercise their right to levy an assessment because they were trying to work out a plan for reorganization when the liquidation proceeding was instituted in January 1937. Thereafter, they became powerless to act. The record is silent as to why the director of insurance did not order a levy after the petition for liquidation had been filed and before the

court ordered and approved the levy by the receiver; but it is fair to assume that having appointed a receiver in pursuance of the liquidation decree, who had assumed possession of the assets and was proceeding before the master to disclose probable liabilities and the probable value of assets for the purpose of recommending the levy of an assessment, the receiver should be allowed to proceed with the responsibility of petitioning the court to direct or authorize the levy at the appropriate time. Defendant insists that under the Code of 1937 "the assessment, if one could be levied, should have been levied by the director of insurance and not by his employee [the receiver]." But even under that code the director of insurance had no power to make a levy without the court's sanction. Paragraph 819 of that code provides that in the event of an order directing the liquidation of any company which has issued assessable policies of insurance "the Director may, *with leave of court*, at any time during the pendency of the proceeding, levy such assessment . . . to the same extent that such assessment . . . might have been levied by the board of directors. . . . '' (Italics ours.) The plain import of this provision vests the court with power to order the director to act and leaves the director powerless to make the levy except "with leave of court." It would thus seem that even under the Code of 1937, which supplied the omission of the Liquidation Act of 1925 to expressly provide for a levy by either the court, the receiver or the director of insurance, the director had to invoke the court's leave to levy an assessment, thus placing the responsibility and discretion with the court where the liquidation proceeding was instituted.

The ultimate question is whether the court had the power to direct and approve the levy by the receiver under the Liquidation Act of 1925. If such power was vested in the court, it becomes of secondary importance whether the receiver could make the levy of his own

accord because he had petitioned the court in the alternative (1) to either recognize a levy to be made by him, or (2) that the court make the levy, or (3) that the court authorize and permit him to do so; and the order entered "authorized and directed [him] . . . to make an assessment" and to make demands on all policyholders within the period fixed by the order. The receiver in open court thereupon presented and filed the levy which the court ratified and approved. Moreover, if the court had the power to order or direct the levy, and in the absence of any provision in the statute specifying whether the director or receiver should invoke the court's authority to that end, the court could certainly order or authorize the receiver, who was appointed by the director and was acting as his representative in liquidating the insolvent company, to proceed with the levy.

Although we find in this State no case where a direct defense was made to a petition for assessment under similar circumstances, there are decisions here and elsewhere which recognize the power of the courts to authorize and direct levies by receivers which were upheld as valid in suits later brought by the receivers to recover against policyholders. Prior to the enactment of recent statutes, contract or policyholders in mutual insurance companies were ordinarily required to execute so-called premium notes which were not payable at any specified time but were given in lieu of payment of premiums so that the board of directors could make a call at any time for the pro rata share of the losses. Although the amount specified in the premium note was certain, it merely fixed the maximum liability and the call or assessment might be for a lesser amount. The contingent liability of the policyholder, which was evidenced by the note, has in more recent legislation been fixed by statute, incorporated in by-laws and provided for in the policy. In *Rand McNally & Co. v. Mutual Fire Ins. Co. for use of*

*Parker*, 58 Ill. App. 528, which was decided as early as 1895, the defendant Rand, McNally & Co. was sued at law by Thomas Parker, who had been appointed receiver of the insurance company under liquidation proceedings instituted by the State auditor in pursuance of the statute. Defendant there executed a note for some $1,500, promising to pay the insurance company "by installments, at such time as the directors . . . may order and assess for the losses and expenses of said company, pursuant to its charter and by-laws." This note expressed defendant's contingent liability as a member policyholder and when the insurance company became insolvent, the receiver brought suit to enforce payment. It was held that "A receiver having been appointed, the court exercises at its discretion the powers of the board of directors as well as such additional authority as is conferred by statute."

Later, in *Clark v. Lehman,* 65 Ill. App. 238, suit was brought at law to collect on an assessment which the chancellor, in a parent suit to dissolve the Masonic Benevolent Association, ordered and directed its receiver to make against surviving members of the association. In sustaining the action the court said that "He [the receiver] succeeded to all the rights of action which had accrued to the association, and we think the court had full power to clothe him with the authority possessed in the first instance by the secretary of the association, of notifying the members that they were liable to pay the assessments in question. [Citing 20 Amer. & Eng. Ency. of Law, pp. 286–290.]"

In *Western Mfrs. Mut. Ins. Co. v. Hutchinson Cooperage Co.*, 92 Ill. App. 1, decided in 1900, a judgment creditor of the insurance company having brought suit, a receiver was appointed who filed a petition for an assessment, and the court directed him to make it. On notice and demand the Hutchinson Cooperage Company failed to pay and the receiver thereupon sued in assumpsit. In approving the order for assessment the

court said: "By the act incorporating the company, the directors were authorized to levy assessments for the payment of losses and expenses, and by the by-laws, which were made a part of the contract of insurance, the directors were given the same power. If the directors had made the assessment in question the expense of spreading and collecting it would have properly been included. The directors did not perform this duty and a court of equity, through its receiver, was compelled to do it for them. In such case the court exercises at its discretion the powers of the board of directors of the company. [Citing *Rand McNally Co. v. Mutual Fire Ins. Co.*, 58 Ill. App. 528.]" It is significant that under the by-laws of the company it was there provided that whenever cash funds became insufficient for payment of losses, expenses and maintenance of the insurance reserve, it should be the duty of the board of directors to collect an assessment, while in paragraph 393 of the Act of 1915, under which defendant in the case at bar was incorporated (Ill. State Bar Stats. 1935, ch. 73 [Jones Ill. Stats. Ann. 66.324]), it is similarily provided that when the company's assets are not equal to the unearned premium reserve and other liabilities, it shall make an assessment upon its members to provide for such deficiency.

It is conceded, of course, that the directors could have levied the assessment before the company's insolvency, but they failed to do so. We find in 32 C. J., sec. 107, title Insurance, page 1043, cited in receiver's brief, numerous cases decided in New York, New Jersey, Pennsylvania, Ohio, Wisconsin, and three decisions in Illinois, which hold that, acting under the authority and sanction of the court, the receiver of a company has the same power to make assessments as had the directors before insolvency. One of these cases is *Western Mfrs. Mut. Ins. Co. v. Hutchinson Cooperage Co.*, 92 Ill. App. 1, hereinbefore discussed. In another case, *Ross v. Knapp, Stout & Co.*, 77 Ill. App.

424, decided in 1898, the charter of the insurance company provided that all persons insured should be members of the company and bound by its by-laws; that premium notes might be received as the directors should require for payment of losses and expenses, and that the directors might levy an assessment upon the premium notes of policyholders at any time they deemed it necessary for payment of losses and expenses. A judgment creditor filed a class suit, making the company defendant, and a receiver was appointed by the court, who, on petition, had leave to make an assessment, notify individual members of their respective shares of the assessment and make demand therefor. In a suit by the receiver the defendant demurred, the trial court sustained the demurrer and dismissed the case, but the Appellate Court sustained the receiver's action and reversed and remanded the case accordingly. In the third case cited, *Western Mfrs. Mut. Ins. Co. v. Rowell Elevator Co.*, 94 Ill. App. 16 (1901), the court sustained recovery in an action at law on the same assessment involved in a like proceeding against Hutchinson Cooperage Company, on authority of the decision in *Ross v. Knapp, Stout & Co.*, 77 Ill. App. 424.

In *Swing v. American Glucose Co.*, 123 Ill. App. 156, it was held that a decree entered in a proceeding to liquidate a mutual insurance company, making an assessment upon the members of the company, if binding upon the resident members thereof, is, likewise, binding upon the nonresident members. The court's conclusion was there predicated upon the principle that the stockholders and members of a corporation are an integral part thereof, are represented in court by the corporation, and a decree against the corporation is not open to collateral attack by stockholders or members when sued upon an assessment so made by a court having jurisdiction of the corporation. It will be recalled that in the case at bar many thousands of the

policyholders to be assessed are nonresidents of Illinois, and this decision, citing numerous other cases, relies on the principle usually invoked in proceedings of this character. One of the cases cited in the *Swing* case is *Hawkins v. Glenn*, 131 U. S. 319. In discussing the relationship between stockholders and the corporation the court pointed out that under the charter of the company a call could be made only by the president and directors, that in the situation of the company's affairs it was a duty to make it; that failing the discharge of that duty by the president and directors, creditors could set the powers of a court of equity in motion to accomplish it; and that "Executing in that regard a corporate function for a corporate purpose, it is difficult to see upon what ground it could be held that the court could not order an assessment operating upon stockholders, who would be bound if the president and directors had ordered it. . . . A stockholder is so far an integral part of the corporation that, in view of the law, he is privy to the proceedings touching the body of which he is a member." In *Lincoln Bus Co. v. Jersey Mut. Casualty Ins. Co.*, 112 N. J. Eq. 538, 165 Atl. 112, decided in 1933, the court said that in levying an assessment upon policyholders, the receiver acts in the place of the directors, under the direction of the court. The defendant's by-laws in the case at bar authorize its directors to exercise the company's power to levy assessments, and par. 393, ch. 73 of the Ill. Rev. Stat. 1935, under which it was incorporated, makes it mandatory on the board, when the corporation is "not possessed of assets at least equal to the unearned premium reserve and other liabilities," to make an assessment "upon its members liable to assessment, to provide for such deficiency."

A sound, well-defined and often repeated theory underlying the collection of assets by receivers of mutual insurance companies and stockholders' liability, dates back to the frequently quoted case of *Relfe*

*v. Rundle*, 103 U. S. 222. The proceedings there were predicated upon a Missouri statute which was similar, in many respects, to the Illinois Liquidation Act of 1925. A contest arose between Relfe, the superintendent of insurance for the State of Missouri, who, together with a receiver appointed by him, was seeking to recover certain assets in the hands of an ancillary receiver appointed in Louisiana. Relfe sued for possession of these assets and it was held that they belonged to him. The underlying theory upon which his rights were upheld has been followed in many of the current decisions and appears in the following excerpt from the court's opinion:

"Relfe is not an officer of the Missouri State court, but the person designated by law to take the property of any dissolved life insurance corporation of that State, and hold and dispose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position. He is an officer of the State, and as such represents the State in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations. His authority does not come from the decree of the court, but from the statute. He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for all the purposes of winding up its affairs."

Defendant's counsel seeks to minimize the force of the foregoing cases and others cited and discussed in the receiver's brief by arguing that in all of them the policyholders were sued for an assesment *after* the entry of the order making the levy; that in no instance was the challenge made to the receiver's application for the assessment; that this constituted a collateral attack, and if it had been made upon the original application, "the story undoubtedly would have been different." While it is true that these cases arose in suits brought by the receiver after assessment had been authorized by the court, we find in that circumstance no reason for invoking a different rule of law governing the authority of the court or the power of the receiver in administering the levy. Some of the decisions sustain the authority of the court because, on appointing a receiver, it assumes control of the affairs of the company and exercises at its discretion the functions and power of the company's directors, as well as such additional authority as may be conferred on it by statute; others hold that the court appointing a receiver directs assessments to be made under its authority, with its approval, to pay the liabilities of the company, costs and expenses; and still others are to the effect that, acting under the authority and sanction of the court, a receiver has the same powers to make assessments as had the directors before insolvency. The salient fact that policyholders have contingent liabilities, contractual in their nature, assumed by them when they became members, fixed by statute, by-laws and policies, which constitute assets of the company to be collected in the course of liquidation, underlies the various theories upon which the courts have upheld assessments, whether levied by the directors of insurance, receivers or liquidators, under the court's direction. Being assets which pass to the receiver, he is delegated to deal with them "in his own

name as receiver or in the name of such company, as the court may by order direct, and as such receiver [he] shall be vested by operation of law with title to all of the property, contracts and rights of action . . . as of the date of the order so directing liquidation'' (par. 498, ch. 73, Ill. Rev. Stat. 1935). Because of these circumstances, the levy of an assessment on policyholders is nothing more nor less than the exercise, by the receiver, of contractual rights vested in him by the liquidation decree, and amounts to no more than a demand for payment of the contingent liability which they assumed; and the levy is, in essence, a demand by the receiver of the assets in liquidation, title to which was vested in him, for payment of this liability. The mere fact that the power and duty of levying assessments is lodged by statute in the board of directors, and not in the receiver, should not defeat the levy when application is made to a court of equity for the necessary relief, because the directors failed to act. ''He was, in fact, the corporation itself for all the purposes of winding up its affairs.'' (*Relfe v. Rundle, supra.*)

Defendant's counsel says that he has found no reported decisions where a direct attack was made on an assessment levied by the receiver. Since the case was argued orally, the substituted counsel for the receiver filed a supplemental brief, wherein we find two such appeals in the same liquidation proceeding (*Commonwealth ex rel. Schnader v. Keystone Indemnity Exchange*, 335 Pa. 333, 6 A. (2d) 821, and 338 Pa. 405, 11 A. (2d) 887). The pertinent section of the Pennsylvania statute (Art. V, par. 206, of title 40 (Insurance), Purdon's Pennsylvania Statutes 1936) contains provisions similar to the Illinois statute pertaining to mutual insurance companies. The first appeal was brought to construe the provisions of certain policies which not only did not contain the usual contingent liability provision required by the Pennsylvania stat-

ute, but *did* provide that *no assessment should be made.* Nevertheless, the court held that this specific provision of the policy could not defeat the levy of an assessment, because ''These contingent liabilities were assets on which it was the duty of the statutory liquidator to realize.'' The second appeal involved the question whether the assessment could include estimated administrative costs, collection expenses and other obligations, and it was held that such items could be estimated and included in the assessment. Subsequent to these two appeals the insurance commissioner of Pennsylvania sued policyholders of the Keystone Company in the State of Maryland for an assessment on their policies, and recovery was allowed in Maryland. (*Taggart v. Wachter, Hoskins & Russell, Inc.* (Md.), 21 A. (2d) 141.) The court there cited *Relfe v. Rundle, supra,* and three other United States Supreme Court decisions holding that the receiver or liquidator takes title to the assets and has the right to sue thereon.

In one of the cases cited by the receiver, the Supreme Court of Maine, in *Pink v. Town Taxi Co., Inc.* (Me.), 21 A. (2d) 656, upheld an assessment on the ground that policyholders had contracted the obligation by reason of their membership, and that the right of the assessment arises from the very nature of a mutual insurance company. The court said: ''The insured in a mutual company holds his policy guaranteeing indemnity against loss 'with a specific and limited fund out of which that indemnity is to be made good. . . . In another aspect he is a member of the corporation, made so by the very nature of the contract, and so declared by law. . . . In this relation, he is an insurer, and is affected by another and very different class of obligations.' [Citing *Hill v. Baker,* 205 Mass. 303.]

'' 'It follows from the very definition of mutual insurance that all who insure . . . are members of it, with all the rights and subject to all the liabilities of

membership; . . . .' [Citing 21 Am. & Eng. Ency., Second Edition, pages 264 and 265]." And the court concluded by saying that "As insurers they must bear their proportion of necessary assessments, not because they promised in so many words in the contract of insurance to pay assessments, but because they saw fit as policyholders to become members of a mutual insurance corporation operating under the assessment plan."

We are of opinion that there is abundant precedent to support the order for a levy of assessment, and it is therefore affirmed.

*Judgment affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.