LLOYD C. WHITMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12006. Promulgated January 26, 1948.

*Lloyd C. Whitman, Esq.*, pro se.
*A. H. Moorman, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Petitioner contends.that all payments received by him as attorney for the receiver during the years 1937 to 1941, inclusive, constituted loans rather than compensation, with the exception of $1,500 received in 1938 for services in connection with two foreclosure suits. He bases his contention on the fact that the interim payments were "on account" of services rendered and were chargeable against the total fee to be ultimately determined. Petitioner takes this position in spite of the fact that in all of the petitions filed on his behalf compensation was requested, and proof of the services rendered was submitted to and considered by the court. There was no showing that the court or the receiver could or did actually authorize loans.

We have no hesitancy in concluding that the partial payments authorized by the local court were compensation for services and were not loans. The petitions fully described the nature and extent of past services and frequently the court made findings that petitioner had rendered services substantially as alleged. In other instances, the court adopted the recommendations of a master to whom the question of interim payments had been referred. That the payments were allowed "on account" served only to assure the final determination of petitioner's fee. This language in no wise indicates that a loan was contemplated. None of the normal attributes of a loan, i. e., promissory notes, security, or interest, were exacted by the court. Furthermore, no restrictions were imposed on the disposition, use, or enjoyment by petitioner of the intermediate allowances.

The evidence further indicates that petitioner received the partial payments under a claim of right and treated them as compensation. He reported the allowances received in 1937, 1939, and 1940 as current income in his original tax returns for those years. It was not.until he became cognizant of the relief provisions of section 107 in 1941 and after the final court order of June 25, 1942, that he sought to reclassify all advances as "loans." From the substance and form of the petitions and orders and the treatment by the petitioner of the proceeds, it is our conclusion that the interim payments did not represent loans to the taxpayer.

Petitioner argues, further, that the sums received prior to 1942 could not be taxable income when received, inasmuch as he might be ultimately required to refund a portion thereof if the total of the

partial payments exceeded the final fee. Although it is true that the court reserved the right to determine the total amounts payable to petitioner for professional services rendered, there was no strong probability that he would be forced to repay the advances already received under a claim of right, nor was he in fact required to do so.

The question of receiving income subject to an infirmity in the claimant's title has already been resolved in other courts. In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, the United States was contesting the beneficial ownership of the North American Oil Corporation of certain oil lands then in receivership. Pursuant to judicial decree, the receiver in 1917 paid over to the latter certain profits earned on the property in 1916. The decree was affirmed, following appeal by the United States, in 1920. In holding that the profits constituted taxable income to North American Oil Corporation in the year when received (1917), notwithstanding the fact that the ownership of the earnings was rendered uncertain by the appeal, Justice Brandeis stated:

\* \* \* If a taxpayer receives earnings under a claim of right and without restriction as to its [*sic*] disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

*Jacobs* v. *Hoey*, 136 Fed. (2d) 954; certiorari denied, 320 U. S. 790, is a case involving facts quite analogous to those of the instant proceeding. There the taxpayer, an executor, was paid amounts from the estate in 1936 and 1937 as advances "on account" of unearned commissions. These payments were not approved by the Surrogate of New York County until 1938. The taxpayer treated the advances as his own funds and reported them as current income in his tax returns for the years when received. Later, the taxpayer desired to reclassify the payments as 1938 income in order to offset capital losses incurred in that year. He argued that the advances represented loans until approved by the surrogate in 1938. The Circuit Court of Appeals for the Second Circuit, relying on *North American Oil Consolidated* v. *Burnet*, *supra*, affirmed the District Court decision, holding that the payments received in 1936 and 1937 were current income and properly taxable in those years. This decision was bottomed on the fact that, while there may have been legal right in the surrogate to disapprove the earlier payments, there was no reasonable likelihood that he would do so.

We think the general principle of law enunciated in these two cases is determinative herein, notwithstanding the necessity for final approval of petitioner's total compensation by the Circuit Court of Cook County. Such a requirement *per se* can not be deemed conclusive in the determination of Federal tax matters. The compensatory pay-

ments in amount of $36,500 which were received under a claim of right by petitioner during the years 1937 to 1941, inclusive, constituted taxable income when received. It follows, therefore, that section 107 is not applicable to these facts, inasmuch as petitioner did not receive at least 80 per cent of his total compensation in 1942.

*Decision will be entered under Rule 50.*